RUTH W. OPPENHEIMER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19938. Promulgated February 28, 1951.

*Albert R. Mugel, Esq.*, for the petitioner.
*Clay C. Holmes, Esq.*, for the respondent.

518

520

521

**OPINION.**

TURNER, *Judge:* The question is whether the income covered by Article II ·of the trusts created by petitioner's father and mother was taxable to her.

The contentions and claims of the parties, both as to fact and law, have in some instances been very loosely made. One contention of the respondent is based on a factual premise that the petitioner re-

ceived the Article I income of the two trusts by her own appointment, and the contention is that since the appointment of Article II income was likewise within her sole discretion and said article specifically declared that "in any event" she was to be included in the class of beneficiaries from whom she had the absolute and uncontrolled discretion to select the recipient or recipients of the income, she accordingly had unfettered command over such income, thereby making the income her income, under section 22 (a) of the Internal Revenue Code, and *Corliss* v. *Bowers*, 281 U. S. 376. As to Article I income, the short answer is that it is not involved in this case, and further, the petitioner did not, and was not entitled to, receive the income under that article by appointment or through an exercise of discretion by anyone, but received it by specific and unqualified grant of the donors. As to Article II income, it is true that the recipient or recipients thereof were to be selected by the petitioner in her absolute and uncontrolled discretion from among her lineal descendants or ancestors and it was specifically declared that the phrase "lineal descendants or ancestors" should include "in any event, Ruth W. Ullman." It is to be noted, however, that an expressed consideration for the creation of each trust was the desire of the grantor "to provide and secure" for his or her family "beyond peradventure a proper maintenance and support," and that the "absolute and uncontrolled discretion" granted to petitioner to designate the recipient or recipients of the income was discretion "as Trustee." We think it follows, therefore, that in the absence of some further facts requiring a contrary conclusion, the discretionary power of the petitioner was a trust power, and not a donee power, and that she did not have such personal and unfettered command over the income, whether distributed to her or not, as would make the income her income within the meaning of section 22 (a), *supra*, and under the doctrine of *Corliss* v. *Bowers, supra. Annie Inman Grant*, 11 T. C. 178, relied on by the respondent, is not this case. There the power to take the income of the trust was in the taxpayer as the widow and legatee of the testator, and not as trustee. *Edgar R. Stix*, 4 T. C. 1140, affd., 152 Fed. (2d) 562, is also distinguishable. There the trustees were, by specific grant from the donor, primary beneficiaries of the trust income, and it required affirmative action on their part to take the income from themselves. While there was in them the discretion to pass the income over to their sons, there was no apparent standard or basis upon which exercise of such discretion could be required. The facts here are to the contrary.

It is the claim of the petitioner that regardless of the provisions of the trust instruments, she could not, under New York law, take the Article II income for herself or apply it to her use. and since the Article II income of the Benjamin Weitzenkorn trust was, in fact,

distributed to Daisy R. Weitzenkorn, who reported the income so distributed as her income and paid the tax thereon, and the Article II income of the Daisy R. Weitzenkorn trust was, in fact, distributed to Benjamin Weitzenkorn, who reported the income as his income and paid the tax thereon, no part of the income was the petitioner's income or taxable to her. So far as the answer to our question turns on the petitioner's discretionary power to name the recipient or recipients of the Article II income, we are able to follow the petitioner's argument as to the income from the Daisy R. Weitzenkorn trust. We have already stated our conclusion that the petitioner's power to designate the recipients of the Article II income was a power as trustee, and as to the Daisy R. Weitzenkorn trust, Benjamin Weitzenkorn was one of the class of beneficiaries to whom petitioner could in her discretion distribute the income, and, having distributed the income to Benjamin Weitzenkorn, the income was his income, to be reported by him, as it was, under section 162 (c) of the Internal Revenue Code.

The situation is not the same as to the Article II income of the Benjamin Weitzenkorn trust which the petitioner and her husband paid over at petitioner's direction to Daisy Weitzenkorn. Daisy Weitzenkorn was not a member of the class of individuals to whom petitioner had the discretionary power to distribute the Article II income of the Benjamin Weitzenkorn trust. In that trust it was pointedly provided that none of the income should be paid to Benjamin Weitzenkorn, the donor, or to any person whom he was legally obligated to maintain and support. It is true the provision mentioned was followed by a declaration that the phrase "lineal descendants or ancestors" should include Daisy Weitzenkorn, but the inclusion of Daisy Weitzenkorn as a lineal descendant or ancestor was in turn limited by the words "provided the Donor at the time and during the term of such designation is not under a legal duty to maintain or support her." Under the laws of New York, a husband is obligated to support his wife,[1] and by section 51 of the New York Domestic Relations Law, it is provided that "a husband and wife cannot contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife." The inescapable conclusion, accordingly, is that Daisy Weitzenkorn was ineligible to receive the Article II income as beneficiary of the Benjamin Weitzenkorn trust. It does appear, however, that the income was, in fact, paid over to her by petitioner and Richard Ullman, her husband and co-trustee, and that this payment was made at the direction of the petitioner. Such being the facts, the only conclusion apparent to us is that the petitioner, exercising her absolute and uncontrolled discretion as trustee, applied the income to her own use, as Benjamin

[1] *Haas* v. *Haas*, 298 N. Y. 69, 80 N. E. (2d) 337.

Weitzenkorn, by specific provision in the trust instrument, provided she might, and then individually gave the money to her mother. Otherwise, we attribute to the petitioner acts in direct violation of the trust powers and duties which she has assumed and claims to have carried out.

In support of the proposition that under New York law she could not name herself as distributee of any part of the Article II income, even though she was, by specific words of the trust instrument, named as one of the class to whom she could in her absolute and uncontrolled discretion distribute such income, the petitioner cites and relies on section 141 of the Real Property Law of New York,[2] and on various decisions of the New York state courts, including *Rogers* v. *Rogers*, 111 N..Y. 228, 18 N. E. 636; *In re Brooklyn Trust Co.*, 295 N. Y. S. 1007; *In re Fowles Will*, 222 N. Y. 222, 118 N. E. 611; *Stanley* v. *Payne*, 119 N. Y. S. 570; and *Lenzner* v. *Falk*, 68 N. Y. S. (2d) 699. With respect to this contention, it is to be noted that section 141, *supra*, is, by its terms, limited to a power to distribute principal and provides no statutory restriction on a granted power to a trustee to distribute income. Similarly, the cases cited and the New York cases we have been able to examine generally, have to do with a discretionary power to distribute principal, rather than a discretionary power over income comparable to that of petitioner under Article II of the trusts before us. In that connection, however, we think it may be said that trust powers may not be interpreted or exercised by a trustee so "as to feather his own nest at the expense of his charge," and the New York decisions do indicate that there may be cases in which there is such conflict of interests as to justify the removal of a trustee, in others the exercise of discretion, in so far, at least, as it relates to the trustee as a beneficiary, must be left to the courts; and in some, the power, by its very nature, requires that it be executed by the trustee in favor of someone other than himself. On the other hand, there is a generally accepted principle that in administering and interpreting a trust, due regard is to be given to the intent of the creator of the trust. Here, the trustor, with definiteness which we think may not be questioned, declared his intent to be that "in any event" the petitioner was to be one of the group to which she in her absolute and uncontrolled discretion as trustee had the power, also expressly given, to distribute the trust income. On the basis of the cases cited, and those we have

---

[2] Sec. 141. Capacity to take and execute a power

A power may be vested in any person capable in law of holding, but can not be exercised by a person not capable of transferring real property. A power, vested in a person in his capacity as trustee of an express trust, to distribute principal to himself cannot be exercised by him; if the power is vested in two or more trustees, it may be executed by the trustee or trustees who are not so disqualified; if there is no trustee qualified to execute the power, its execution devolves on the supreme court. [As amended L. 1945, c 843, eff. April 18, 1945.]

examined, we do not think it follows, the facts being what they are, that the New York courts would, in the absence of fraud or abuse of discretion, reject or refuse to approve the acts of the petitioner in administering the trust.[3]   Here, however, we are not supervising or controlling the administration of the trust, but are required to determine the tax consequences after the fact, or, to put it differently, the tax effect of what has already occurred.   Petitioner took the Article II income of the Benjamin Weitzenkorn trust and gave it to Daisy Weitzenkorn, who was not an eligible beneficiary, and petitioner claims that she was acting "as Trustee" in so doing.   The only way such action can be harmonized with the specific words of the trust. instrument, is to say that as trustee she distributed the income to herself and then gave it to her mother.   No one has made any point in this case questioning the propriety of her acts, and, the circumstances being as they are, we do not see how petitioner, as the basis for avoiding the tax consequences of her act, can be heard to say that she acted outside her trust powers.   We accordingly conclude that. the Article II income of the Benjamin Weitzenkorn trust is taxable to petitioner because, in the discretion of the trustee, it was distributed. to her.   Section 162 (c) of the Internal Revenue Code, *supra*.

There remains for determination the effect of petitioner's right to take down each year $25,000 from trust corpus.   The respondent, citing and relying on *Elsie C. Emery*, 5 T. C. 1006, affd., 156 Fed. (2d) 728, certiorari denied, 329 U. S. 772, claims that since the petitioner, given time, could take the entire corpus, the entire income from both trusts is her income.   That the power and right to take $25,000 from. the corpus of the trust, in each and every year, is a donee power, and not a power in trust, is, we think, apparent from the terms of the trust. instrument.   The petitioner, during her lifetime, was given the right, merely by making demand therefor, to take $25,000 from trust corpus in each calendar year.   The right was hers individually and without limitation.   In fact, petitioner does not contend otherwise, admitting that by reason of the right she is taxable on the income from $25,000

---

[3] See *In re Peabody's Will*, 96 N. Y. S. 556.   In that case the trust was an *inter vivos*. trust providing that the income was to be distributed for the support and maintenance of grantor's children and grandchildren with absolute and unrestricted power in the trustee, grantor's son and a beneficiary, to fix and vary the amounts distributed and to withhold all income "from any or more" and to apply and distribute the same to others. Any successor trustee was to be named from grantor's "lineal descendants."   There was no "lineal descendant" not a beneficiary who was qualified to act.   The trustee distributed the income equally among a sister, a brother and himself.   Petitioners charged abuse of discretion in distributing the income and asked for construction of the trust and for an accounting.   The court held that grantor's wishes as to trustee should prevail and that the trustee was not disqualified because a beneficiary ; that it will be presumed that a fiduciary will properly perform his duties, and in the absence of fraud or bad faith he would not be removed and that the action to be taken would turn on the proof.   See also *In re Block's Will*, 60 N. Y. S. (2) 639 ; *In re Haydens Estate*, 16 N. Y. S. (2) 122 ; *In re Fortes Will*, 267 N. Y. S. 603 ; *In re Cowens state*, 265 N. Y. S. 40 ; and *Carrier v. Carrier*,. 226 N. Y. 114, 123 N. E. 135.

of the trust corpus each year. It is her claim, however, that since she has already reported the Article I income, and since that income is one-third of the entire income under both Articles I and II, the income which she has so reported is in excess of the income from $25,000 of corpus, and, therefore, no additional amount is to be added to her income by reason of her right to take corpus.

It is well settled that an unqualified right to take and use trust corpus gives to the person holding the right such command over the trust property as to make the income therefrom his income. *Jergens v. Commissioner*, 136 Fed. (2d) 497; *Elsie C. Emery, supra; Ella E. Russell*, 45 B. T. A. 397; *H. S. Richardson*, 42 B. T. A. 830, affd., 121 Fed. (2d) 1.[4] We do not agree with the respondent, however, that petitioner's right in the taxable years here involved extended to the entire trust corpus. While her right to take corpus was unqualified, it was limited to $25,000 in each year, and it was not cumulative. On the other hand, we do not agree with the petitioner that the Article I trust income reported by her covers in full the income which was hers by reason of her unqualified right to take corpus. By the terms of the trust instrument, the $25,000 of trust corpus which petitioner had the right to take on demand, in each year, was specifically chargeable to "the corpus of the trusts," and not to corpus underlying Article I to the exclusion of Article II, or *vice versa*. It follows, we think, and we so conclude, that of the income which was hers by reason of her right to take corpus, only one-third thereof may be said to have been reported by her when she reported the income distributed to her by reason of the provisions of Article I. The remaining two-thirds of the income attributable to the $25,000 of corpus which she had the right to take in each of the taxable years was over and above the income received and reported by her as Article I income. The conclusion here reached is of importance only with respect to the Daisy R. Weitzenkorn trust, since we have above concluded, for reasons already stated, that the entire income of the Benjamin Weitzenkorn trust is taxable to petitioner.

We have no way of knowing what the amount of trust income on $25,000 of trust corpus was in the taxable years here in question, or what its ratio was to the total trust income. There is evidence of record disclosing the total trust income and the securities transferred to the trust are shown by stipulation, but we are not advised as to the value of the trust corpus at the time of transfer or for the years in question. The parties may, however, under Rule 50, make the necessary computations to give effect to the conclusion reached.

---

[4] For a New York case dealing with the property rights in trust corpus of the holder of an unqualified power to take corpus, see *Major v. Major*, 163 N. Y. S. 925.

The remaining issue is whether the petitioner is subject to the penalty proposed by the respondent for failure to file a timely return for 1943. The respondent contends that the petitioner did not file the return within the time required by law, and that her failure to do so was due to willful neglect. The petitioner claims that her return was timely filed and that she is not subject to the penalty.

In support of his position, the respondent relies on the stamped filing date of April 29, 1944, placed on the return in the collector's office. The petitioner relies on her custom or practice as to the preparation of her returns and the filing of them, together with the check for the tax, immediately or within a short time after preparation, and to the fact that the return was not in her possession on a date when it would have been too late for it to have reached the collector by mail by March 15, 1944.

There is no evidence as to when the return was actually received by the collector. It was signed by petitioner on February 10, 1944, and on February 15, 1944, she drew her check for the tax. These dates are consistent with the petitioner's claim that her return was filed long before the due date. The petitioner made the impression of one who was honest and fair in her testimony. While she could not remember precisely that she personally mailed the return, or had it mailed, she was certain that she followed her usual method in sending it to the collector. She was positive that she did not have the return in her possession on a date too late to enable her to make a timely filing of it. This fact, we think, is persuasive that she timely mailed the return.

In *Capento Securities Corporation*, 47 B. T. A. 691, aff'd., 140 Fed. (2d) 382, involving a question similar to that presented here, we said:

> In order to show in the instant case that the failure to file timely returns was due to reasonable cause, petitioners could offer proof that the returns had been timely "placed in the mails, properly addressed and postage paid," either through the oral testimony of the corporate officer charged with the filing of the returns or through the documentary evidence of the envelopes in which they were mailed. * * * Petitioners were therefore confined in their proof on this issue to the envelopes which would have definitely proved the time when the returns were mailed to the collector and which, in all cases involving a question of whether a return was posted in ample time to reach the collector's office by the due date, should have been "preserved by the collector and forwarded to the Commissioner with the return."

While the petitioner had the burden of proof on this issue, it appears that she has made a prima facie case. If the return had not been timely mailed, preservation of the envelope by the representatives of the respondent would have been the normal course for them to take. Since the respondent failed to produce the envelope, it may reasonably be assumed, we think, that he did not preserve it because it was of no value as evidence.

From a consideration of the evidence bearing on this issue, we have found as a fact that the petitioner's return was timely filed. Accordingly, we hold that the petitioner is not liable for the penalty proposed by the respondent.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

VAN FOSSAN and DISNEY, *JJ.*, dissent.