J. MARION WRIGHT AND ALICE M. WRIGHT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59143. Filed May 29, 1958.

*J. Marion Wright, pro se.*
*Eugene F. Reardon, Esq.*, for the respondent.

BRUCE, *Judge:* This proceeding involves a deficiency of $4,586.80 in income tax for the calendar year 1952. The sole issue is whether $10,000 presented to petitioner by the Japanese Chamber of Commerce of Southern California in behalf of the Japanese of California was a gift or compensation for services rendered. Certain concessions were made by petitioner.

### FINDINGS OF FACT.

J. Marion Wright (hereinafter referred to as petitioner) and Alice M. Wright are husband and wife and reside in Los Angeles, California. They filed a joint income tax return for the calendar year 1952 with the district director of internal revenue at Los Angeles, California.

Petitioner is an attorney in Los Angeles. Since 1913 he has represented many Japanese in litigation involving the alien land acts of California, which were passed in 1913 and 1920. These acts prohibited aliens ineligible to United States citizenship from owning or leasing California land.

Sei Fujii was a Japanese ineligible to United States citizenship. He owned and operated a Japanese newspaper in Los Angeles and was a prominent citizen in the Japanese community. Fujii had known petitioner for nearly 40 years, having first met him in 1910 when both were law students at the University of Southern California. Fujii was an interpreter and business adviser to Japanese before entering the newspaper business in the early 1930's. As an interpreter he had frequently worked with petitioner and had recommended petitioner to many Japanese in need of legal advice.

After World War II the Japanese aliens were the only group of substantial size still affected by the alien land acts and Fujii, along with other Japanese, was quite interested in having the acts declared unconstitutional. He felt the acts were discriminatory and unjust. Fujii expressed his views to petitioner, who agreed to represent Fujii in an action to test the constitutionality of the alien land acts. Because of his long friendship with Fujii, petitioner agreed to represent him without fee and to appeal the case as far as necessary to have the acts declared unconstitutional.

Fujii bought a piece of land and instituted proceedings under the alien land acts against the State of California to quiet title.[1] Fujii's case was first tried in the Superior Court. The court held that the alien land acts were constitutional. Thereafter the case was appealed to the District Court of Appeals, Los Angeles. The District Court held that the alien land acts were unconstitutional and reversed the Superior Court. The attorney general of California then asked for a hearing in the State Supreme Court, which was granted. The case was argued before the Supreme Court and submitted for decision. After approximately 15 months, on April 17, 1952, the Supreme Court in *Sei Fujii* v. *State*, 38 Cal. 2d 718, 242 P. 2d 617, held the alien land acts unconstitutional. Petitioner represented Fujii throughout the entire litigation. Fujii paid the court costs but, pursuant to his agreement with petitioner, paid no fee to him. At no time did petitioner request or expect a fee for his services in connection with the case.

Although the California Supreme Court's decision in the Fujii case enabled the Japanese aliens to own or lease California land, the primary impact of the decision was social rather than economic, for the Japanese felt that they were not being treated equally and that the land acts were basically discriminatory. The economic impact was small because many of the Japanese aliens who had been unable to own or lease land had children born in the United States who could own or lease land. The McCarran-Walter Act was enacted on June 27, 1952 (66 Stat. 239), and provided that "the right of a person to become a naturalized citizen of the United States shall not be denied or abridged because of race * * *."

Following the California Supreme Court's decision in the *Fujii* case, spontaneous suggestions were made by several Japanese in the Los Angeles area that a banquet be given in honor of petitioner and Fujii for the purpose of showing the deep appreciation and gratitude which was felt for them. In the early summer of 1952 a dinner was held at which about 350 prominent Japanese were present. Speeches

---

[1] Pursuant to the alien land acts any fee interest in real property acquired in violation of their provisions was to escheat to the State.

of gratitude and appreciation were made and petitioner and Fujii were each presented a small pin. After petitioner and Fujii left the dinner, suggestions were made by several individuals that a fund be raised and given to petitioner and Fujii as a token of appreciation and gratitude for what they had done for the Japanese of California. A volunteer committee was organized under the auspices of the Japanese Chamber of Commerce and solicitations were made throughout California. Nearly 1,100 people made payments to the fund in amounts ranging from $1 to $500. The names of the payers and the amounts paid were published in the Japanese newspapers.

Some months after the first dinner a second dinner was given in honor of petitioner and Fujii. Speeches of appreciation were made and checks for $10,000 were given to petitioner and Fujii. There was no relationship of attorney and client existing between the payers and petitioner or the Japanese Chamber of Commerce and petitioner.

Respondent determined that the $10,000 received by petitioner represented compensation for services rendered.

The $10,000 received by petitioner was intended to be and was in fact a gift.

### OPINION.

The question presented herein is one of fact and due to the unique character of the facts before us an extensive analysis of other decisions as to what constitutes a gift would be of little value. Suffice it to say that the intentions of the parties, particularly the payer, are of primary importance. *Bogardus* v. *Commissioner*, 302 U. S. 34; *Willkie* v. *Commissioner*, 127 F. 2d 953. If the $10,000 was intended to represent payment for legal services rendered by petitioner, the amount received was taxable income. If, however, the payments by third parties were made to show an appreciation of or kindness towards petitioner and not intended as recompense for services rendered, then the amount received was a gift.

Respondent argues that petitioner rendered valuable legal services in the *Fujii* test case. The ultimate decision in that case was an economic benefit to many individuals of Japanese ancestry residing in California who thereby became eligible to own and lease California land, and was a social benefit to all individuals of Japanese ancestry who thereby were freed from the stigma of the discriminatory alien land acts. Respondent concludes that since the payers benefited from petitioner's legal services and since their payments were motivated by petitioner's work in the test case, the $10,000 was compensation for petitioner's services and hence taxable income. We cannot agree with respondent's argument.

Respondent fails to distinguish between the motivating factor for making the payment and the intent with which the payment was made.

It is true that had someone other than petitioner argued the *Fujii* case petitioner would not have been given the $10,000. However, this fact standing alone does not indicate that the payers intended the payment to be compensation rather than a token of appreciation and goodwill. Simply because the payers benefited from petitioner's services to Fujii, it by no means follows that the payment in question was not a gratuity. Indeed, the circumstances surrounding the payment to petitioner and the testimony of two witnesses, both officers of the Japanese Chamber of Commerce of Southern California in 1952 and both payers to the fund of petitioner and Fujii, clearly illustrate that the payers intended "a gift, pure and simple." The fact that the $10,000 was a gift was emphasized at the time of presentation. The payers "were very happy and very grateful" that the land acts had been declared unconstitutional. As one witness testified, "We were very happy, sentimentally speaking, because we thought it was discriminatory—a discriminatory act. * * * we thought it was contrary to the fundamental principles of the United States, and contrary to the provisions of the Constitution of the United States, and we had faith in the American Courts that someday the courts would rectify that, and our faith was correct and true, and our expectations realized. * * * We were very happy * * * we Japanese feel that a thankful heart is a happy heart, we wanted to show our appreciation; we were very happy."

No attorney-client relationship existed between petitioner and payers. In the test case petitioner represented only his old friend Fujii and did not expect any compensation for his services. The payers were in no way directly involved in the litigation of the *Fujii* test case.

The decision in the test case apparently had more impact as a matter of principle than economic benefit. Regardless of the decision in the *Fujii* case in April 1952, the constitutionality of the alien land acts was rendered a moot question so far as the Japanese were concerned by the passage of the McCarran-Walter Act hardly 2 months later. Apparently the solicitations of funds and the presentation of the $10,000 to petitioner were made after the passage of the McCarran-Walter Act. Thus it is clear that the payers had nothing to gain from their acts other than personal satisfaction, for they were under no legal or moral obligation to make the payments and could not anticipate any benefits as a result of the payments to petitioner. See *Bogardus* v. *Commissioner, supra,* where the fact that no relationship existed between the payer and the payees weighed heavily in the Supreme Court's decision. See also *Estate of Grace G. McAdow,* 12 T. C. 311.

Upon examination of the entire record we have concluded that the $10,000 presented to petitioner was intended to be, and was in fact, a gift and not compensation for services rendered.

*Decision will be entered under Rule 50.*