MAX KRALSTEIN AND BESSIE KRALSTEIN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84257. Filed September 10, 1962.

*Jacob P. Lefkowitz, Esq.*, for the petitioners.
*Warren S. Shine, Esq.*, and *Stephen M. Miller, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* 1. In 1956 petitioner Max Kralstein was vice president of the Bakery and Confectionery Workers' of America Interna-

tional Union. On June 23, 1956, between 1,300 and 1,400 persons gathered at the Waldorf-Astoria Hotel in New York City for a testimonial dinner in his honor, sponsored by local 3 of the international union. As a result of ticket sales to this testimonal dinner and payments received for placing names in a souvenir journal published in conjunction with the dinner, a total of $85,470 was collected. After the payment of all expenses, the balance of $60,916.15 was given to petitioners in the form of checks in the aggregate amount of $57,818.94, an oil portrait of petitioner Max Kralstein of a stipulated cost of $1,447.21, and a mink stole for petitioner Bessie Kralstein of a stipulated cost of $1,650. The only issue in relation to the foregoing is whether the $60,916.15 thus received by petitioners in 1956 qualifies for the statutory "gift" exclusion under section 102(a) of the 1954 Code.[1] The Commissioner has determined that none of this amount so qualifies.[2] Petitioners contend that the entire amount in controversy was intended as a gift to them and is therefore not subject to taxation.

It is plain that not merely one purported gift is here in question, but literally hundreds of purported gifts.[3] Each person who bought a $25 banquet ticket or had his name or his business' name placed in the journal at a cost ranging from $50 to $750 in theory contributed part of the ultimate amount received by petitioners.[4] If we could

---

[1] SEC. 102. GIFTS AND INHERITANCES.

(a) GENERAL RULE.—Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.

[2] The deficiency notice sent petitioners determined that $59,916.15 received by them as a result of the testimonial dinner constituted additional income. The Commissioner increased the amount to $60,916.15 by amendment to his answer herein. The parties stipulated that petitioners in fact received $60,916.15 in cash and property from the net proceeds of the testimonial dinner, so no question of burden of proof on the amount involved has arisen.

[3] On brief the petitioners for the first time stated the alternative position that the dinner committee of local 3, which received and disbursed all funds connected with the testimonial dinner, might be considered the donor of the contested gift to petitioners rather than each individual who purchased a dinner ticket or a journal insertion. We see no merit in this contention. All of the evidence points to the fact that the committee served as merely a collector of and conduit for the money raised. There is no indication that any money was given to the committee for use for any purpose the committee might choose. Thus, it is the intent of each individual participant which must determine the nature of petitioners' receipt and not the intent of the committee which was formed only to gather and pay out the funds. Cf. *J. Marion Wright*, 30 T.C. 392. Moreover, the point is not properly before us. It was not raised in the pleadings nor was the case tried on this theory.

[4] Thus, while dinner ticket sales amounted to $33,825, the expenses of the dinner amounted to only $17,963.26. Similarly, $51,645 was raised for journal insertions, while the printing of the journal cost only $6,250. Other expenses for printing and stationery, postage, and bank charges totaled $340.59. Hence, the net amount of $60,916.15 which was ultimately used for petitioners' benefit resulted from both participation in the dinner and the journal, in the proportions of approximately one-quarter and three-quarters respectively.

Of course, each person who purchased a $25 dinner ticket was entitled to get a dinner for such ticket and at best, unless he never intended to attend the dinner, could have intended a gift of only the difference between the cost of such dinner and $25. Similarly, each person who placed his or his business' name in the journal at best could have intended a gift to petitioners of only the payment made for such insertion less the cost of publishing the name. We have taken this into consideration in our apportionment of the net proceeds received by petitioners.

say on the record before us that all intended to make a gift to petitioners or that none so intended, our task would be an easy one. But after hearing the testimony of some 45 participants, though only a fraction of the total, we are convinced that some participants intended to make a gift but that many more did not. It has been necessary, therefore, on the available evidence to attempt to apportion the total amount received by petitioners between that portion which was in fact intended as a gift and that portion which was in fact not so intended. By our ultimate finding that $12,000 of the amount received by petitioners was intended as a gift, we have made such an apportionment.

Recently in *Commissioner* v. *Duberstein,* 363 U.S. 278, the Supreme Court discussed and restated the applicable principles to be applied in determining whether or not a specific transfer to a taxpayer in fact amounts to a gift to him within the meaning of the statute. Quoting with approval language in the dissenting opinion of the earlier case of *Bogardus* v. *Commissioner,* 302 U.S. 34, 43, the Court indicated that "what controls is the intention with which payment, however voluntary, has been made." *Commissioner* v. *Duberstein, supra* at 286. If the transfer proceeds from a "detached and disinterested generosity," "out of affection, respect, admiration, charity or like impulses," it is a gift in the statutory sense. If, on the other hand, the transfer proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit of an economic nature," it is not a gift. *Commissioner* v. *Duberstein, supra* at 285.

The testimonial dinner in honor of petitioner Max Kralstein and the accompanying souvenir journal brought forth participation by persons with varying interests. In our findings we have classified these persons and participants in six groups. One group, consisting of businesses which supplied and serviced the baking industry, viewed participation primarily as an advertising expense and in no sense made any gifts to petitioner. In contrast, the group consisting of bakery employees and other individuals contained some personal friends of petitioner who participated out of friendship and affection for him and intended merely to contribute to a gratuity for his benefit. As to the other four groups—the employers of members of local 3, the employers' trade associations and guilds, local unions, and the lawyers and doctors—each had certain business reasons for participating, but each also included a few participants within its ranks who in whole or in part may have intended to make a gift to petitioner. For example, the employers of members of local 3 participated mainly for business reasons and not because of affection, generosity, or like motive; however, there were some in this group who had known petitioner for many years and whose participation was influenced to some extent by this factor.

From this mixture of interests and purposes, the money was raised and the net proceeds ultimately given to petitioner. It is clear that some participants had the requisite "detached and disinterested generosity" and affection or respect for petitioner to indicate that the dominant reason for their purchasing banquet tickets or a journal insertion or both was to make a gift to petitioner. *Commissioner* v. *Duberstein, supra;* cf. *J. Marion Wright,* 30 T.C. 392. Many others it is equally certain participated for reasons wholly apart from any donative intent toward petitioner. These persons agreed to participate, as indicated above, primarily for a variety of business reasons. They anticipated, whether rightly or wrongly, that some benefit (whether specifically contemplated or of some undefined nature) might result to their individual businesses from such participation, or that failure to participate might have some unfavorable business consequences to them. In the special context of this case, where labor solicited management for contributions and one local union canvassed other local unions to pay tribute to an officer of the international union, many subtle and some not so subtle economic and business pressures appear to have caused considerable participation. And payments made by such participants, who in our appraisal of the evidence were responsible for the greater part of the so-called contributions, do not qualify for the statutory gift exclusion. Cf. *Commissioner* v. *Duberstein, supra; Commissioner* v. *LoBue,* 351 U.S. 243; *Bogardus* v. *Commissioner, supra.*

As already noted, the Commissioner determined that the entire amount received by petitioners fails to qualify as a "gift" under the statute. In support of this position, the Commissioner points to the testimony of several witnesses who, though asserting that a gift to petitioner had been intended, admitted that the amount involved had been paid by a business check (corporate, partnership, or sole proprietorship) and had been deducted or was probably deducted as a business expense for income tax purposes. Other witnesses, while professing no knowledge of how their accountant or bookkeeper actually treated the outlay involved, also testified that they used a business check for the purpose of payment and gave every indication that the amount was probably deducted as a business expense. The Commissioner argues that such evidence undercuts any donative intent testimony from these same witnesses and that such handling of the dinner ticket and journal insertion expenses indicates that few if any in fact intended the payment to be a gift. We have taken this testimony into consideration in the apportionment we have made. As was stated in *Alex Silverman,* 28 T.C. 1061, 1066, affirmed 253 F. 2d 849 (C.A. 8) : "The corporation's treatment of the disbursement as an expense on its books and tax return is evidence that the corporation did not regard it as a gift." Of course, the same evidentiary inference

applies equally to partnerships and sole proprietorships. But we have also heeded the observation of the Supreme Court in the *Duberstein* case, 363 U.S. at 287–288: "The taxing statute does not make non-deductibility by the transferor a condition on the gift exclusion * * *. The conclusion whether a transfer amounts to a 'gift' is one that must be reached on consideration of all the factors."

We are satisfied on the record as a whole that some, but not many, persons who may have deducted their payments for the dinner or journal or both as a business expense in fact may have intended to make a gift to petitioner Max Kralstein. Many, whether or not they deducted the payments, did not intend a gift. Our apportionment of the total received by petitioners has been extremely difficult. Considering the spectrum of purposes and intentions expressed in the testimony of the witnesses who appeared at the trial, it was not possible with any degree of certainty to know the dominant reason that explained the participation of all of those who contributed, particularly of the hundreds who did not testify. An apportionment was clearly called for and we have done our best on the basis of the evidence presented, bearing in mind that the burden was on the petitioners to prove qualification for the statutory gift exclusion. Cf. *Cohan* v. *Commissioner*, 39 F. 2d 540, 544 (C.A. 2).

2. On their joint income tax return for 1956, petitioners claimed a deduction for contributions in the total amount of $1,150. Itemized contributions in the total amount of $535 were listed, after which "miscellaneous" contributions in the amount of $615 were claimed. The Commissioner disallowed the claimed contributions to the extent of $615 "for lack of substantiation." Petitioner Max Kralstein testified only that "a great number of these contributions were made by cash," and that he could not now say specifically which had been paid in cash and which by check. He did not testify to whom the "miscellaneous" contributions had been paid nor was any other evidence offered in petitioners' behalf to support the amount claimed for these purported contributions. In this state of the record, where there was no proof that any part of the amount disallowed by the Commissioner was in fact paid by petitioners to a qualifying organization under the statute, there is no basis for an apportionment under the rule of *Cohan* v. *Commissioner, supra*. Because petitioners have failed to substantiate the disallowed portion of the claimed contributions, the Commissioner's determination in this regard is upheld.

3. The remaining question is whether the Commissioner correctly imposed an addition to tax of 5 percent for late filing of petitioners' 1956 joint return pursuant to section 6651(a) of the 1954 Code. The return was due to be filed on or before April 15, 1957. Sec. 6072(a), I.R.C.1954. The return is stamped "received" by the district director's office on April 19, 1957. Petitioners' signatures on the return are each

820

dated April 12, 1957. No check was enclosed since the return claimed an overpayment. Petitioner Max Kralstein testified that he recalled personally mailing the return at a mailbox at the corner of Madison Avenue and 61st Street in New York City on April 12, 1956, the Friday before the date due for filing, after having had the return prepared in a nearby building. We believed this testimony and have found as a fact that the return was so mailed. It is a fair inference that the return, thus mailed on April 12, would have been received not later than April 15. In the circumstances, we think that the petitioners have put forward a prima facie case proving the timely filing of their return. The Commissioner presented no rebuttal evidence regarding actual receipt of the return and failed to produce the envelope in which the return was received. Cf. *Ruth W. Oppenheimer*, 16 T.C. 515, 527. Based on the evidence of record, we have made a finding that petitioners' return was timely filed. We hold, therefore, that the Commissioner erred in imposing the addition to tax in issue.

*Decision will be entered under Rule 50.*