Frank M. Workman v. Commissioner.
Workman v. Commissioner
Docket No. 1112-63.
United States Tax Court
T.C. Memo 1965-3; 1965 Tax Ct. Memo LEXIS 327; 24 T.C.M. (CCH) 16; T.C.M. (RIA) 65003; January 14, 1965
Max Kier, for the petitioner. James T. Finlen, Jr., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in petitioner's 1955 income tax and an addition thereto for late filing of 1955 return under section 6651(a), Internal Revenue Code of 1954. [1] A deficiency in the amount of $13,209.92 income tax for 1955 is conceded by petitioner. The only issue is with respect to the addition of tax under the above statute for late filing of the 1955 return, in the sum of $3,302.48. Petitioner claims he filed his 1955 *328 return in January of 1956 and respondent contends the return was not filed until June of 1957. Findings of Fact Some of the facts have been stipulated and they are found accordingly. Petitioner is a graduate of LaSalle University in accounting. He worked as an accountant for a telephone company for 12 years and he was for a time a traveling auditor for a national accounting firm. He has been filing his individual income tax returns since 1932 and he also filed returns for six corporations. It is stipulated that "petitioner filed his 1955 federal income tax return, Form 1040, with the District Director of Internal Revenue, Omaha, Nebraska" and that Exhibit 6 is that return. It bears a red ink stamp "47 RECEIVED JUN 24 1957 DIR. INT. REV. OMAHA, NEBR." The return shows an overpayment of tax in the amount of $355.37 for that year and directions that it be credited on the 1956 estimated tax. The present deficiency came about as a result of an audit of the return which took place in a later year. Petitioner's 1956 return was timely filed and a credit claimed from petitioner's *329 1955 return in the amount of $355.37. Sometime in June of 1956 petitioner received a form letter from respondent making some inquiry about his 1955 return and calling for a reply on the back thereof. This form letter was returned by petitioner, giving the information requested. On September 19, 1956, petitioner received a form letter from respondent as follows: Frank M. Workman, 1421 P, Lincoln, Nebr. Taxable Year: 1955 The information you recently furnished pertaining to your income tax return filed for the above year has been examined and a thorough search made of Internal Revenue records. We have been unable to find any record of the receipt of your return. You should, therefore, file a duplicate return on the enclosed Form 1040. The return should be an exact copy of the original, and should show your name and address as it appeared on the original. Please attach copies of all schedules or statements that were attached to the original. You need not attach withholding statements, Forms W-2, to the duplicate return. In addition, please fill out the statement on the back of this letter, certifying that you have not received a refund of the overpayment. Also be sure to *330 indicate your present address in the space provided if it is different from that as shown on the original return. Attach the statement to the face of the duplicate return when it is mailed to our office. We are enclosing a self-addressed envelope to use when you mail the duplicate. This envelope requires no postage. Prompt consideration will be given to the duplicate return. Very truly yours, /S/ H. H. Heckenlively, H. H. Heckenlively, Chief, Collection Division The back of the above form letter contains a certification form to be executed by the taxpayer to certify that he has not received a refund or credit for the amount claimed as overpayment and declare the truth of the information furnished under penalties of perjury. Petitioner did not fill out or return the above form letter dated September 19, 1956. At the bottom of the said letter which he retained there is the notation in pencil that petitioner placed thereon: "Rev office found it in someone elses basket." Sometime in June of 1957 petitioner received the following letter from respondent, which is Exhibit 4 in the record: Frank M. Workman, 511 So. 14th St., Lincoln, Nebr. 1. Year… 1956 2. Estimated tax *331 credit deducted on your return… 355.37 3. Your ES tax credits on our records… none 4. Underpayment… 355.37 On your income tax return you deducted the amount shown in item 2 above as credit for estimated tax payments. According to our records your estimated tax credits are for the amount shown in item 3. To assist us in adjusting your account, please examine your cancelled checks or money order receipts and furnish the information requested on the back of this letter. If we do not receive this information within 15 days, your income tax return will be adjusted to allow the estimated tax credits as shown on our records. Very truly yours, /S/ H. H. Heckenlively, H. H. Heckenlively, Chief, Collection Division We have no record of your 1955-1040 return being filed in this district, therefore, we are unable to check the overpayment you are asking to be credited to your 1956-1040. Would advise you filing a substitute 1040 for 1955. This letter exhibit bears a received stamp exactly like the stamp on petitioner's 1955 income tax return to-wit: "47 RECEIVED JUN 24 1957 DIR. INT. REV. OMAHA, NEBR." Petitioner received an undated form letter to the effect that his 1955 *332 income tax return was incomplete because Form W-2 was not attached. By letter to respondent dated August 4, 1957, and stamped received by respondent on August 8, 1957, petitioner stated: I am enclosing my copy of form W-2 as per your letter enclosed. The one I sent in was pasted to the tax return and must of come loose and got lost. Will my copy be sufficient to replace it - if not I will have Copy A made over. Thank you Frank Workman The enclosure was a copy of the 1955 withholding tax statement. Under date of August 4, 1957, petitioner sent the following letter which is Exhibit 8 in the record and is stamped received by the director on August 8, 1957. Mr. H. H. Heckenlively, Chief, Collection Division, Internal Revenue Service, Omaha, 2 Nebraska. Dear Sir: I filled in the form that you sent me on the first request and addressed it to you. I cannot understand why the original tax return is not on file nor the second one I sent. Would it be filed under 940 South Cotner, my former address? When I mailed in the second copy to your office I made a carbon on plain white paper, so have no regular form. Since I will be in Omaha, Monday August 12, I will call your office *333 and if it is not found under 940 So. Cotner then I will come in and make another from my carbon on your regular form. Yours very truly / S/ Frank M. Workman, 511 So. 14, Lincoln, Nebr. This letter was found in the files of respondent's records with the petitioner's 1956 return. Opinion Petitioner filed his income tax returns on a calendar year basis. Section 6072 provides such returns "shall be filed on or before the 15th day of April following the close of the calendar year * * *." Section 6651 provides "[in] case of failure to file * * * on the date prescribed therefor * * * unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax * * * 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate." Petitioner testified he had never filed a late return and that he prepared his 1955 individual income tax return the first part of January 1956; that it was a simple return and he used one *334 of the two 1040 Forms the Commissioner had sent to him to make out the return in pencil and that he then typed the original return from the pencil copy using a carbon and white sheet called a "back-up sheet" upon which there would appear only what was typed on the 1040 Form. He testified he signed the return and signed as attorney-in-fact for his wife and that he mailed it in January of 1956 in a stamped envelope addressed to the district director of internal revenue, Omaha, Nebraska. Petitioner acknowledged receipt of the form letter dated September 19, 1956, wherein it was stated: "We have been unable to find any record of the receipt of your return * * *" and wherein he was told to "file a duplicate return on the enclosed Form 1040." It was his testimony that when he received this letter it disturbed him so he went to Omaha and called the writer of the letter in the district director's office. He said he called from his office in a motel he operated in Omaha and his call was referred to some other man in the director's office. He said he told this man he was coming in with the back-up copy of the return. He said this man told him not to bother about it because his return had been *335 found in another basket. He says he made the pencil notation on the bottom of the form letter at the time of this telephone call. Some substantiation for petitioner's story is furnished by the testimony of an accountant hired by petitioner in 1957. He asked petitioner and his attorney for a copy of petitioner's 1955 income tax return. He was told by the attorney that the pencil copy of this return had been introduced in petitioner's divorce trial in 1956 and was unavailable [2] but petitioner gave the accountant the back-up sheet of the 1955 return to which there was pinned the form letter of September 19, 1956, with the pencil notation in petitioner's handwriting to the effect that the 1955 return had been found in someone else's basket. This was long before there was any indication that the Government was asserting a penalty for late filing of the 1955 return. The accountant testified the form letter with this notation thereon remained in his files until the trial of this case. The issue here is one of fact. It is understandable that no one in the Government employ *336 would be able to testify from personal knowledge exactly when petitioner's 1955 income tax return was filed. The markings on the return and the evidence of processing procedure would indicate the return was filed June 24, 1957. On the other hand, to hold that this was the filing date would mean holding petitioner lied as to filing his 1955 return in January of 1956 and his story of calling the director's office and receiving the word that it has been found is untrue. We are dealing here with a return that recited an overpayment of tax. The correctness of the return is not an issue - only the time of filing. Petitioner is in the real estate business but he has had accountancy experience. He had had some experience with income tax returns and the return involved was extremely simple. There could be no thought of the taxpayer deliberately attempting to conceal 1955 income by not filing such a return. Since he was using the overpayment on the next year's (1956) estimated tax he would know that the return would have to be filed in order to secure the credit. We are inclined to believe his story about the January 1956 filing. We are quite convinced that his testimony of what occurred *337 at the time he received the September 1956 form letter is true. At this time petitioner's position that he owed no tax for 1955 was not being challenged by the Government. If petitioner had filed no return the form letter was telling him to file one and he knew there would be no penalty if he then complied. We are inclined to think petitioner, if he had not filed a return 9 months earlier, would have merely complied with the letter. It would be pointless to assert he had filed a return if actually he hadn't and no penalty would attach to an untimely filing. He reacted more like one would who knew he had filed a return. His trip to Omaha and his telephone call to the director's office and the notation on the letter are consistent with his January 1956 filing. We cannot believe this pencil notation on the form letter was an untrue self-serving piece of evidence manufactured by petitioner and designed to bolster a spurious claim of a timely filed return. We accept the accountant's testimony that the pencil notation was already on the form letter when he received it in 1957. Based on the foregoing evidence, we hold petitioner's 1955 return was timely filed. The rest of the evidence is *338 not very persuasive for either party but it can also be said that with petitioner's explanation and evidence of some confusion in respondent's records it is also not inconsistent with petitioner's position. It is respondent's theory that the 1955 return was received when his form letter, Exhibit 4, was returned. At the bottom of the form letter there is the typed clause telling petitioner there is no record of his 1955 return being filed. It is true that both the form letter and the 1955 return have the same date received (June 24, 1957) stamped on the face of each instrument. However, petitioner testified he thought this form involved his 1956 return. There is some slight ground for this in that the top of the letter states the year 1956. Petitioner said he thought the reference at the bottom of the letter was in error and that he sent in a copy of his 1956 return when he returned the form letter and he followed this up by a telephone call and learned the 1956 return had been located. There seems to be other evidence indicating that for a time the 1956 return was lost and petitioner's letter, Exhibit 8, was produced from respondent's files concerning the 1956 return. The 90-day *339 notice of the deficiency in this case was issued December 18, 1962, almost three and one-half years after the 30-day letter prepared by the examining agent had been served. [3] It is stipulated that no delinquency penalty was asserted in the 30-day letter mailed to petitioner on July 28, 1959. It can be assumed the 30-day letter was followed by protest procedure. And yet it is established that the first time petitioner, or the accounant he hired in 1957 who worked with the examining agent, ever heard of the claim that the 1955 return was not timely filed was when they received the 90-day letter after the examining agent had died. Petitioner cites such cases as Max Kralstein, 38 T.C. 810, and Ruth W. Oppenheimer, 16 T.C. 515, where the late filing penalty was denied largely because petitioner made out a prima facie case of timely filing that was not satisfactorily rebutted by the Commissioner. Petitioner herein has similarly made out a prima facie case, and, for reasons differing from *340 those in Kralstein and Oppenheimer, the Commissioner has not overcome it. Based upon a consideration of all of the evidence, which indicates, there was some confusion in respondent's records, and certainly no reason or cause for the taxpayer to file anything but a timely return, we hold respondent erred in imposing the addition to tax that is here in issue. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. This pencil copy that was introduced in the divorce trial was later secured and introduced in this case.↩
3. Petitioner concedes that the assessment and collection of any income tax or addition to the tax for the taxable year 1955 is not barred by any statute of limitations.↩