THOMAS L. JOHNSON AND RITA J. JOHNSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2114-62, 2418-63, 2584-64.   Filed July 31, 1967.

*Thomas J. Kane, Jr.*, for the petitioners.
*Martin A. Schainbaum*, for the respondent.

BRUCE, *Judge:* Respondent determined deficiencies in income tax of the petitioners and additions to tax under section 6653(a), I.R.C. 1954, for negligence or intentional disregard of rules and regulations as follows:

| Docket No. | Year | Deficiency | Addition to tax, sec. 6653(a), I.R.C. 1954 |
|---|---|---|---|
| 2114-62 | 1958 | $362.04 | $18.10 |
| 2418-63 | 1959 | 1,791.25 | 89.56 |
| 2584-64 | 1960 | 1,597.10 | 79.86 |

Certain adjustments contained in the notice of deficiency have been conceded by petitioners. The only issue remaining for determination herein is whether certain amounts received by petitioner, Thomas L. Johnson, from his part-time employer, now deceased, were gifts or loans, or compensation for services. Some of the facts were stipulated.

FINDINGS OF FACT

The stipulation of facts and exhibits attached thereto are incorporated herein by reference.

Petitioners are husband and wife who resided in Merced, Calif., on the date the petitions herein were filed. They filed joint income tax returns for the calendar years 1958, 1959, and 1960 with the district director of internal revenue at San Francisco, Calif. Rita is a party hereto only by reason of having filed joint returns. Accordingly Thomas will be referred to as petitioner.

Petitioner has been employed by the Merced County Fire Department since 1954, at first as an extra, then as a full-time fireman, and presently as captain. He was a full-time fireman in 1958, 1959, and 1960. He usually worked in shifts of 24 hours on duty and 24 hours off. Beginning in 1953, at which time he was employed by the Pacific

Telephone Co., petitioner began working as a part-time gardener for Walter H. Robinson and continued working for him on his off-duty days after he became a fireman.

Robinson was a wealthy retired cattleman and rancher who lived alone on a 5-acre tract one-half mile from the Merced city limits. At the time petitioner began working for him Robinson was about 78 years of age and had lived most of his life in Merced County. Although married, he and his wife did not live together. She preferred to live in Carmel, where the weather was not as hot as in Merced. They had no children. During the 7 years petitioner worked for him, Robinson's wife visited him on two occasions—once for 2 months in 1959, and 2 or 3 years before that for a period of 2 weeks. Although he had other relatives in Merced County and rented a ranch to a nephew, none of his relatives ever visited him and he never visited them. He was not, however, a recluse. He enjoyed meeting and conversing with other people about politics, current events, business matters, and their own interests. On his visits to the postoffice, bank, and stores in Merced he frequently took flowers which he had grown on his place to the employees. He was a graduate of Stanford University, of which he was very proud, and had at one time been a teacher. He appeared keenly alert mentally and, until a day or two before his death on July 8, 1960, remained physically active. He never used a cane. Other than to have his glasses adjusted or to have his ears "washed out" he made only two visits to a doctor on account of illness during the 7 years petitioner worked for him. Prior to his employment of a part-time housekeeper in 1959, Robinson did his own housework and cooking and worked in his flower garden. He also did his own shopping and, until 1957, when apparently because of his age, he could not obtain a driver's permit, he drove his own car. Thereafter, on the days he was working for Robinson, petitioner drove him to the postoffice, bank, or grocery store.

Robinson died at a hospital in Merced on July 8, 1960. On July 6, sometime after he had started working in the yard, petitioner found him lying on the floor of his bedroom, clad in his pajamas and apparently ill. He called an ambulance, which took him to the hospital. The death certificate stated the cause of death as "Bronchopneumonia," due to "Right internal capsule infarction." It also stated his date of birth as February 19, 1875, his age as 85, and his occupation as "Cattleman-Retired." The coroner's autopsy report also indicated evidence of "arteriosclerosis of the cerebral vessels" and "coronary arteriosclerosis $\overline{S}$ occlusion."

The records of the Superior Court of California in and for the County of Merced in *In The Matter of the Estate of Walter H. Robinson*, stated the fair market value of the property in Robinson's estate was $587,318.63 at the date of his death.

Robinson usually paid petitioner by check at the end of each day he worked. On a number of occasions he also handed petitioner checks for various amounts, some of which were made out to petitioner as payee and some to "cash." Some of the checks bore notation in Robinson's handwriting, reading "gift" or "loan." Robinson's check stubs also carried similar notations with respect to some of the checks. The following is a schedule of the checks, other than those for daily wages, handed petitioner by Robinson showing the dates and amounts, and the notations:

| Date | Amount | Notation | Where noted (check or book) |
|---|---|---|---|
| May 16, 1958 | $50 | | |
| July 15, 1958 | 150 | | |
| July 31, 1958 | 50 | | |
| Aug. 30, 1958 | 150 | Loan | Book. |
| Sept. 13, 1958 | 500 | Gift | Do. |
| Oct. 27, 1958 | 150 | do | Do. |
| Nov. 27, 1958 | 50 | do | Do. |
| Dec. 10, 1958 | 125 | | |
| Jan. 5, 1959 | 100 | Loan | Book. |
| Jan. 22, 1959 | 300 | | |
| Feb. 16, 1959 | 250 | | |
| Feb. 20, 1959 | 100 | | |
| Feb. 24, 1959 | 140 | | |
| Mar. 6, 1959 | 250 | | |
| Mar. 29, 1959 | 150 | Loan | Check. |
| Mar. 30, 1959 | 150 | | |
| Apr. 7, 1959 | 1,000 | Loan | Check. |
| Apr. 14, 1959 | 400 | Gift | |
| Apr. 27, 1959 | 500 | Loan | Check. |
| May 6, 1959 | 1,000 | Gift | Do. |
| May 20, 1959 | 500 | do | Book. |
| June 10, 1959 | 500 | | |
| July 8, 1959 | 500 | Gift | Check. |
| Aug. 11, 1959 | 800 | | |
| Oct. 17, 1959 | 600 | Gift | Check. |
| Dec. 7, 1959 | 600 | | |
| Jan. 10, 1960 | 1,000 | Gift | Check. |
| Feb. 5, 1960 | 500 | do | Book. |
| Feb. 28, 1960 | 250 | | |
| Mar. 14, 1960 | 500 | | |
| Mar. 16, 1960 | 2,000 | | |
| Apr. 2, 1960 | 100 | | |
| Apr. 22, 1960 | 400 | | |
| Apr. 30, 1960 | 1,000 | | |
| May 5, 1960 | 100 | | |
| May 17, 1960 | 500 | | |
| June 3, 1960 | 100 | | |
| June 7, 1960 | 100 | | |
| June 17, 1960 | 300 | Loan | Check. |

Petitioner never signed a note or other evidence of indebtedness for any of these amounts, nor has he ever returned or been requested to return any of these amounts to Robinson or his estate. There is no record Robinson ever filed a gift tax return.

When petitioner asked why he was being given the money, Robinson said, "Well, it's just that I think you could use the money." He also said "I have given quite a few of my friends money," and in explanation of why he gave money to petitioner and others, Robinson stated he would like to see the money do some good while he was living to see it; that he didn't believe in waiting until he passed on. The larger checks were given after Robinson had sold a ranch. He told petitioner "I am going

to give you this money, I think you can use it. \* \* \* I know I have more than I'll ever spend, so I am going to give you this."

Petitioners have three children, 11, 10, and 9 years of age. Robinson appeared fond of petitioner's family. He frequently called petitioner's wife on the telephone and would invite her and the children to come see the goldfish and flowers. Shortly before the first child was born, Robinson told petitioner "If you have a boy we're going to send him to Stanford University."

The amounts received by petitioner from Robinson aggregating $1,225 in 1958, $7,840 in 1959, and $6,850 in 1960, were gifts or loans.

### OPINION

The only question presented for our consideration herein is whether the amounts received by petitioner from Robinson in the years 1958, 1959, and 1960 were gifts and therefore nontaxable under the provisions of section 102(a) of the Internal Revenue Code of 1954, as contended by petitioners, or represented compensation for services which is taxable under the provisions of section 61(a)(1) of the 1954 Code as contended by respondent. The question is primarily one of fact to be determined from "the totality of the facts" of the particular case. The most critical consideration is the transferor's intention. *Commissioner* v. *Duberstein*, 363 U.S. 278.

We have carefully considered all of the facts and circumstances presented and are satisfied that Robinson intended the amounts in question as gifts. Petitioner had worked for Robinson as a gardener or handyman on a part-time basis since 1953. Beginning in 1957, after Robinson could not obtain a driver's permit, apparently because of his age, petitioner would also drive Robinson to the postoffice, bank, or stores, on the days he worked for him. Other than that, petitioner's duties remained substantially the same throughout the years. He was always paid for these services by check at the end of each day worked. While the rate of pay is not indicated, the amounts reported on his income tax returns—$2,090.50 for 1958, $1,782.02 for 1959, and $1,482.65 for approximately 6 months in 1960—indicate petitioner was amply compensated for the work he performed. Certainly, the additional amounts of money which Robinson gave petitioner during those years—$1,225 in 1958, $7,840 in 1959, and $6,850 in 1960—are not to be attributed to the small amount of chauffeuring which petitioner did for him. On the contrary, we are satisfied the additional sums were paid to petitioner "out of affection, respect, admiration, charity or like impulses." *Commissioner* v. *Duberstein, supra.* Robinson had seen petitioner's family increase and was obviously fond of them. He often talked with petitioner's wife on the telephone and invited her to bring the children to see his goldfish and flowers. When he gave petitioner

additional money he told him he thought petitioner could use it, that he had more money than he could ever spend, and that he wanted to see the good it could do others while he was living instead of waiting until he had passed on to give it.

The fact that some of the checks bore the notation "loan" is immaterial since petitioners are not taxable whether they were gifts or loans, and the respondent is not seeking in this proceeding to collect for unpaid gift taxes.

Respondent's suggestions that Robinson was incompetent to make gifts is not supported by the evidence and is entirely lacking in merit.

Since there are certain adjustments which were not contested,

*Decisions will be entered under Rule 50.*