Emelio Romero and Geraldine B. Romero v. Commissioner.
Romero v. Commissioner
Docket Nos. 2172-62, 2529-63, 2585-64.
United States Tax Court
T.C. Memo 1967-157; 1967 Tax Ct. Memo LEXIS 103; 26 T.C.M. (CCH) 733; T.C.M. (RIA) 67157; July 31, 1967
*103 The petitioner, Geraldine B. Romero, was a checker for Purity Stores, a supermarket in Merced, California, during the years 1955 to 1960, inclusive. In 1959 and 1960, she was also employed as a part-time housekeeper by Walter H. Robinson, an elderly wealthy retired man who lived alone on a five-acre tract located just outside of Merced. He agreed to pay her $100 per week for this employment. During the years 1955 to 1960, inclusive, petitioner received substantial sums of money from Robinson, the amounts received in 1959 being in excess of the agreed wages paid her as housekeeper. Held: (1) The amounts received by Geraldine from Robinson during the years 1955 to 1958, inclusive, were nontaxable gifts within the provisions of section 102(a), I.R.C. 1954; (2) $7,950 of the amounts received by Geraldine from Robinson during the year 1959 was taxable income within the provisions of section 61, I.R.C. 1954; (3) At least a part of the deficiency for the taxable year 1959 was due to neglect or intentional disregard of rules and regulations within the meaning of section 6653(a), I.R.C. 1954. Thomas J. Kane, Jr., Civic Center Professional Bldg., 550 W. 22nd St., Merced, Calif. Martin A. Schainbaum, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax of the petitioners and additions to tax under section 6653(a), Internal Revenue Code of 1954, for negligence or intentional disregard of rules and regulations, as follows: Additions
to Tax
Docket
Sec. 6653(a),
Number
Year
Deficiency
I.R.C. 1954
2172-62
1955
$ 2,533.57
1956
2,290.55
1957
2,152.73
1958
4,982.90
2529-63
1959
10,652.86
$532.64
2585-64
1960
1,132.62
56.63
*105 Certain adjustments contained in the notices of deficiency have been conceded or are not contested by petitioners. The issues presented for our determination are (1) whether certain amounts received by petitioner, Geraldine B. Romero, from Walter H. Robinson, now deceased, during the taxable years 1955 to 1960, inclusive, were non-taxable gifts or loans, or were taxable income under the provisions of section 61 of the Internal Revenue Code of 1954; (2) whether Geraldine received taxable income from Louis Livesay (aka Louis Lively) during any of the taxable years; and (3) whether petitioners are liable for additions to tax for the years 1959 and 1960 under the provisions of section 6653(a) of the Internal Revenue Code of 1954. Findings of Fact The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioners Emelio Romero and Geraldine B. Romero are husband and wife who resided in Merced, California, during all the years in question and at the time the petitions herein were filed. They filed joint Federal income tax returns for the years 1955 to 1960, inclusive, with the district director of *106 internal revenue at San Francisco, California. During the years 1955 to 1960, inclusive, Emelio earned a salary as a truck driver and bread salesman. During the same years, Geraldine earned a salary as a checker for Purity Stores, a supermarket in Merced. As a checker, Geraldine was required to record on a cash register the items purchased and collect the purchase price of the items from the purchaser. She also approved the initialed checks tendered by the purchaser, and otherwise received and disbursed cash in accordance with her position as a checker. Walter H. Robinson was a wealthy retired cattleman and rancher who lived alone on a five-acre tract one-half mile from the Merced city limits. Although married, he and his wife did not live together. She preferred to live in Carmel where the weather was not as hot as in Merced. They had no children. During the seven years preceding his death in 1960, Robinson's wife had visited him on only two occasions, - once for two months in 1959 and two or three years before that for a period of two weeks. Although he had other relatives in Merced County and rented a ranch to a nephew, none of his relatives ever visited him and he never visited *107 them. He was not, however, a recluse. He enjoyed meeting and conversing with other people. He had a friendly greeting for all whom he met on the streets or at the postoffice, bank or stores in Merced. He frequently took flowers which he had grown on his place to the employees of the postoffice, bank and stores which he visited. His conversations included politics, current events, business matters and the personal interests of his friends. He appeared keenly alert mentally and, until a day or two before his death, remained physically active. He never used a cane. Prior to his employment of Geraldine as a part-time housekeeper in 1959, Robinson did his own housework and cooking and worked in his flower garden. He also did his own shopping and, until 1957, when he could not obtain a driver's permit, apparently because of his age, he drove his own car. Thereafter, he was driven to the postoffice, bank or stores by his part-time gardener on the days he was working for him, and sometimes by Geraldine after she was employed as his part-time housekeeper, on the days she was working for him. Robinson died at a hospital in Merced on July 8, 1960. On July 6th Thomas L. Johnson, his gardener, *108 while working in the yard, became concerned that Robinson had not appeared in the yard as was his custom, and hearing his dogs barking inside the house, investigated and found Robinson lying on the floor of his bedroom, clad in his pajamas and apparently ill. Thompson called an ambulance which took him to the hospital. The death certificate stated the cause of death as "Bronchopneumonia" due to "Right internal capsule infarction." It also stated his date of birth as February 19, 1875, his age as 85, and his occupation as "Cattleman-Retired." The coroner's autopsy report also indicated evidence of "Arteriosclerosis of the cerebral vessels" and "Coronary arteriosclerosis S occlusion." The records of the Superior Court of California in and for the County of Merced in In The Matter of the Estate of Walter H. Robinson, stated the fair market value of the property in Robinson's estate was $587,318.63 at the date of death. Geraldine first became acquainted with Robinson about 1952 in the course of her duties as a checker at the Purity Store. Robinson did most of his grocery shopping there and they became well acquainted. During the period 1954 to 1960, Robinson cashed many checks at *109 the Purity Store. Most of them were in amounts of $100, though some were for less and many ranged in amounts from $100 to $200. Most of them bore symbols indicating Geraldine had waited upon him and approved the checks for cashing. The amount of his purchases was first deducted and he was handed the balance in change. Geraldine did not receive any part of these checks at the time they were cashed. On an undisclosed number of occasions, when they would meet in the postoffice or on the streets, Robinson would hand to Geraldine undisclosed amounts of money in cash or checks with the statement "here's something you can use," or words to that effect. He told her he "couldn't take it with him," that he gave to others and that he wanted to help her. Robinson made similar statements on occasions when he gave money to his part-time gardener. [1]
The amounts handed to Geraldine on such occasions, prior to 1959, were gifts and were not compensation for services performed or to be performed by her. In 1959, Robinson employed Geraldine as *110 a part-time housekeeper at an agreed wage of $100 per week. This employment continued until his death in 1960. Her duties included housecleaning, washing dishes, cleaning the stove, changing bed linens and vacuum-cleaning. Robinson usually paid her by check payable to "cash." On many occasions the checks were in excess of the weekly wage agreed upon. In 1959, Robinson gave Geraldine 44 checks aggregating $17,950.00, all of which except one were made payable to "cash." One check dated May 28, 1959 in the amount of $3,000 was given to assist her in the building of a swimming pool. Another dated August 31, 1959 in the amount of $7,000, payable to Gary H. Parker, Geraldine's son by a former marriage, was used to purchase a house near that of petitioner, allegedly as an investment for Gary. Petitioners never signed a note for either of these checks and Robinson never filed a gift tax return. On May 10, 1965, in settlement of an action instituted against them by the Estate of Walter H. Robinson, petitioners transferred real property, including the house mentioned above, having a fair market value of $12,500, to the Estate of Walter H. Robinson. The parties have stipulated that $7,950 of *111 the proceeds from the checks received by Geraldine from Robinson in 1959 should have been, but was not, reported by petitioners as income on their 1959 income tax return. During the year 1960, Geraldine received 19 checks from Robinson aggregating $2,285. The parties have stipulated, and petitioners' return for 1960 shows, that petitioners reported $2,600 as income received by Geraldine from Robinson in 1960. Geraldine did not receive any money from Louis Livesay (aka Louis Lively) during any of the taxable years involved. A part of the deficiency for the taxable year 1959 was due to neglect or intentional disregard of regulations within the meaning of section 6653(a) of the Internal Revenue Code of 1954. Opinion Respondent contends that the money Geraldine received from Robinson in the taxable years 1955 through 1960 was taxable income under section 61 of the Internal Revenue Code of 1954. The petitioners contend that this money represented gifts or loans, except for the amounts of compensation stipulated. Respondent refers to the provision of section 61 that "gross income means all income from whatever source derived" and *112 to the opinion of the Supreme Court in Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-430 (1955), recognizing the intention of Congress to tax all gains except those specifically exempted. The petitioners refer to the specific exemption of gifts provided by section 102, and to the expression of the Supreme Court in Commissioner v. Duberstein, 363 U.S. 278, 285 (1960), that the most critical consideration in determining whether a transfer is a gift is the transferor's intention. Robinson was an elderly retired individual who apparently enjoyed helping his friends. Over a period of years he had friendly contact with Geraldine, who had waited on him in the supermarket. He transferred money to her with the expressed intention of helping her and her family, indicating that he also helped other people financially. His income was greater than his needs and he expressed a desire to see his money do some good for others while he was still living. She was not employed by him in 1955, 1956, 1957, or 1958, and the amounts he transferred to her in those years were clearly not compensation for services rendered. Respondent does not suggest a valid basis for taxing *113 these transfers. These contributions were made from a "detached and disinterested generosity," Commissioner v. LoBue, 351 U.S. 243, 246 (1956), and out of "affection, respect, admiration, charity, or like impulse," Robertson v. United States, 343 U.S. 711, 714 (1952); Commissioner v. Duberstein, supra.They were gifts. Cf. Thomas L. Johnson, 48 T.C. 636. In 1959 Geraldine had quit the supermarket job when Robinson engaged her as a part-time housekeeper at an agreed wage. During that year he transferred to her additional amounts over and above her pay. The parties have stipulated that $7,950 of the amounts received by Geraldine in 1959 should have been reported as income in that year. We interpret this to mean the parties are in agreement that the amounts transferred to her in 1959 in excess of that figure were not taxable income. In any event, we are satisfied they were not compensation. The $7,000 check was clearly a loan. It was made payable to Gary after Geraldine had requested a loan and told Robinson the purpose for which it was desired. The $3,000 check bore no relationship to Geraldine's employment and was either a loan *114 or gift. Neither the $7,000 nor the $3,000 check constituted taxable income. In the petitioners' 1960 return they reported the receipt of $2,600 in income from Robinson. This is the amount of wages ( $100 per week) which Robinson had agreed to pay her. As a matter of fact Joint Exhibit 7-G, which was offered in evidence, lists only 19 checks aggregating $2,285. Thus, it is evident petitioners did not fail to report any income received from Robinson during the year 1960. Respondent's suggestion that Robinson was incompetent to make gifts is not supported by the evidence and is entirely lacking in merit. Nor is the fact that Robinson never filed a gift tax return material. Respondent is not seeking in this proceeding to collect for unpaid gift taxes. Cf. Thomas L. Johnson, supra.
On brief, both parties have referred to certain amounts asserted in the notices of deficiency as having been received by Geraldine from Louis Livesay (aka Louis Lively) in the years 1955 to 1960, inclusive, - $3,600 in each of the years 1955 to 1959, inclusive, and $1,800 in 1960, or a total of $19,800. Except for the year 1960 (Docket No. 2585-64), the statements attached to the notices *115 of deficiency have not been made a part of the record herein by either party. Accordingly we are left without any information, other than for the year 1960, as to any amounts determined by respondent as having been received by petitioners from Louis Livesay (or Lively). Statements in briefs do not constitute evidence. Rule 31(f), Tax Court Rules of Practice. Assuming, however, for the purpose of this discussion only, that respondent determined increases in petitioners' taxable income by reason of amounts alleged to have been received from Livesay (Lively) we are satisfied that no such amounts were in fact received by them. Respondent's determination was apparently based upon testimony of Geraldine in the action instituted by the Estate of Walter H. Robinson to recover some of the money Geraldine had received from Robinson. She now testifies that she lied in that action, in an apparent effort to cover up the source of some of the money she had received from Robinson. Neither her testimony in the State Court proceeding, nor any part of the record in that action, was made a part of the record in this proceeding. Granted that her present testimony is suspect, we are nevertheless not satisfied *116 that she received any money from Livesay during the years in question and have so found. Respondent's counsel was well aware, as his cross-examination of Geraldine in the present proceeding indicates, that Livesay was merely a former fellow employee of Geraldine's in a grocery store in Texas prior to 1951 or 1952. His address was know to respondent's agents and it would have been a simple matter to have subpoenaed him as a witness in this action. Not having done so, we are inclined to the belief his testimony would not have supported the determination. The basis of respondent's determination regarding this item of income is too flimsy to warrant the presumption of its correctness. In their return for 1959 the petitioners failed to report the receipt of any income from Robinson, either the agreed amount of Geraldine's weekly wage or the excess. Accordingly we have found a part of the deficiency for that year to be due to neglect or intentional disregard of regulations within the meaning of section 6653(a). A different conclusion is required for the year 1960. The petitioners reported the receipt of an amount in excess of the amount Geraldine is shown to have received. Accordingly, *117 we hold petitioners are not liable for any addition to tax under section 6653(a) for the year 1960. Decisions will be entered under Rule 50. Footnotes
1. See Thomas L. Johnson, - T.C. - filed this day. The parties stipulated the testimony in the Johnson case could be considered in the present case.↩