MILTON WEIHRAUCH and INCORONATA WEIHRAUCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weihrauch v. Commissioner
Docket No. 8549-75.
United States Tax Court
T.C. Memo 1978-9; 1978 Tax Ct. Memo LEXIS 507; 37 T.C.M. (CCH) 28; T.C.M. (RIA) 780009; January 9, 1978, Filed Ronald L. Tobia *508 and Kent A. F. Weisert, for the petitioners. Kevin C. Reilly and Michael A. Mayhall, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the calendar years 1967 and 1968 in the amounts of $5,803.68 and $1,388.06, respectively. Additions to tax under section 6653(a), I.R.C. 1954, [1] were also determined for those years in the amounts of $290.18 and $69.40, respectively. By an amendment to his answer filed after the trial in this case to conform the pleadings to the proof, respondent has asserted, in the alternative, an additional deficiency for 1967 of $3,441.95 and an increase in the addition to tax for 1967 of $172.10. After concessions by the parties, the following issues remain for our consideration: (1) Whether petitioners understated their taxable income in 1967 and 1968 as calculated by respondent through an analysis of sources and applications of funds; (2) whether petitioners received reimbursement of business expenses *509 includable in their gross income in 1967; and (3) in the alternative, whether petitioners received funds from certain individuals in 1967 and whether those funds were properly excluded from their gross income as gifts or loan proceeds. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Milton Weihrauch and Incoronata Weihrauch, husband and wife, filed joint Federal income tax returns for the calendar years 1967 and 1968. When they filed their petition in this case, they resided in Elizabeth, New Jersey. In 1967 and 1968, petitioners resided in Elizabeth, New Jersey, with their three minor children, all of whom attended elementary school during these years. Milton Weihrauch (hereinafter petitioner) had four children by a previous marriage, none of whom were dependent on him for support in 1967 or 1968. Petitioner was president of District 3 of the International Union of Electrical, Radio and Machine Workers (hereinafter I.U.E.) from 1950 until September 1967. In 1967, he was also an international vice president of the I.U.E. and vice president of the state A.F.L.-C.I.O. in New York and New Jersey. Petitioner had been active *510 in union work since 1940 when he became a shop steward in the plant in which both he and his wife worked. In his capacity as president of District 3, petitioner coordinated 130 local unions in New York and New Jersey with representation in 450 companies. District 3 had approximately 130,000 members in 1967. In May 1967, District 3 was placed in receivership by the international union and control of District 3 was placed in two receivers. Petitioner received his last salary check as president in May 1967.He obtained legal counsel and instituted a lawsuit to terminate the receivership in June or July. Petitioner was formally removed as president of District 3 in September 1967. Petitioner's loss of control of District 3 occurred after charges were brought against him within the union regarding use of funds. The charges related in part to two checks drawn on the union bank account totaling $4,940.63 received by petitioner and included in income on his Federal income tax return for 1967. A criminal investigation was commenced against petitioner after he was removed as president of District 3. On April 4, 1968, petitioner waived indictment and a felony information was filed *511 in the United States District Court for the District of New Jersey. Count I of the information stated: From on or about January 1, 1965 to on or about July 5, 1967 in the State and District of New Jersey, MILTON WEIHRAUCH while an officer, that is, President, of District 3, International Union of Electrical, Radio and Machine Workers, AFL-CIO, a labor organization engaged in an industry affecting commerce, as defined by Sections 402(i) and 402(j), Title 29 U.S.C., wilfully and knowingly did embezzle, abstract and convert to his own use the aggregate sum of $6,700.63 of the monies and funds of such organization. In violation of Section 501(c), Title 29 U.S.C.
Petitioner entered a plea of guilty to the offense described in Count I on January 17, 1969. He was sentenced to 5 years imprisonment, the sentence was suspended, and he was placed on probation for 5 years. A special condition of his probation was that petitioner could not engage in union activities. After removal as president of District 3, petitioner was employed by Posh Construction Company in 1967 and by United Lacquer Manufacturing Corporation in 1968. In 1967, petitioners received $14,583.11, consisting *512 of $8,111.28 in salary from District 3 and $1,531.20 in salary from Posh Construction Company which they reported as wages on their Federal income tax return and $4,940.63 which they reported on their 1967 income tax return as "Pension - IUE Dist # 3." This receipt by petitioners was a subject of the described union investigation. Petitioners received $905 in additional compensation from District 3 that was not reported as income on their return.They also received a Federal tax refund of $49.11, net proceeds of loans from lending institutions of $2,851.94, and $2,513.28 from the surrender of United States savings bonds. Petitioners' only other sources of funds during 1967 were payments, gifts and loans from individuals, including funds received at a testimonial given in honor of Mr. Weihrauch at the Roost Restaurant on October 27, 1967. Petitioners began 1967 with cash on hand of approximately $1,500. The only checking account held by either petitioner in 1967 and 1968 was one in the name of Ruth Weihrauch (petitioner Incoronata Weihrauch). During 1967, deposits to this account were $4,720 and withdrawals were $4,587.38. In 1968, deposits were $4,955.55 and withdrawals were *513 $4,717.31. Petitioners had Federal income tax of $1,108.90 and FICA tax of $357.82 withheld from Mr. Weihrauch's salary in 1967. They made the following deductible expenditures in 1967 in the manner indicated: Deduction
Check
Cash
Contributions
$ 2.00
$ 793.00
Real Estate Taxes
195.48
646.78
State & Local Gasoline
Taxes
0
52.00
General Sales Taxes
0
85.00
Interest
640.00
1,376.16
Employee Business Expense
0
5,835.00
Miscellaneous
0
87.50
Total
$837.48
8,875.44
Petitioners made a net repayment of principal of loans in 1967 of $12,713.98. They made expenditures for nondeductible personal living expenses of $3,749.90, paid by check, and $8,675 paid in cash. [2] Mr. Weihrauch also paid legal fees of $3,000 in cash in 1967. *514 In 1968, petitioners received $14,781, which they reported as wages on their Federal income tax return. They also received proceeds from an I.U.E.-A.F.L.-C.I.O pension fund in the amount of $1,053. They reported the receipt of this amount on Schedule D of their return and included $526 of it in their gross income. Petitioners received a Federal income tax refund of $905.79 in 1968.Petitioners also received $458.50 as net proceeds of loans from lending institutions, $896.34 from an insurance claim, and $7,000 in loans from Saul Cantor and P. Gripaldi. Petitioners had Federal income tax of $2,026.10 and FICA tax of $386.36 withheld from Mr. Weihrauch's salary in 1968. They made the following deductible expenditures in 1968 in the manner indicated: Deduction
Check
Cash
Contributions
$ 29.03
$ 245.97
Real Estate Taxes
875.18
72.82
Local Gasoline Taxes
0
31.00
General Sales Tax
0
68.00
Interest
660.00
445.00
Business Expenses
0
5,520.00
Total
$1,564.21
$6,382.79 Petitioners made a net repayment of principal of loans in 1968 of $4,332.74. They made expenditures for nondeductible personal living expenses of $3,153.10, paid by check, and $8,515, *515 paid in cash. [3] Mr. Weihrauch also paid legal fees of $1,200 in cash in 1968. From the income reported on their 1967 return, the deductions previously described totaling $9,712.92 were subtracted to obtain taxable income. On their 1968 income tax return petitioners took deductions totaling $5,963 as previously described. [4]
*516 In his notice of deficiency mailed to petitioners, respondent determined that petitioners had received additional income in 1967 and 1968. He determined that petitioners received reimbursement of business expenses in 1967 in the amount of $2,350 which "was not shown on [their] return as an offset to business expense." In addition, he determined that petitioners had received income from unknown sources in the amounts of $14,821.47 in 1967 and $8,016.27 in 1968. These figures were computed "by reference to bank deposits, cash payments and personal and other non-deductible expenditures" as shown on the following schedule: 1967
1968
FUNDS APPLIED
Deposits to bank account
$ 4,720.00 4,559.55
Check Expenditures: Itemized Deductions: Interest (Including Mortgage Payments)
640.00
660.00#lR5al Estate Taxes
195.48
875.18
Contributions
2.00
29.03
Personal Living Expenses
3,749.90
3,153.10
Cash Expenditures: Itemized Deductions (Total per return less
amount listed above as paid by check)
2,952.94
862.79
Business Expense--shown on return as
Misc. ded.
5,835.00
--
Business Expense--per form 2106
--
5,520.00
Per Cost of Living Form (5510) less items
also on return as business expenses: Total per Exhibit B attached
16,825.90
13,439.36
Less: Toll charges--home entertainment,
meals, etc.
Employee business expenses shown on 2106
but erroneously omitted from total: Home
Ent. and toll charges
--
1,984.00
Repayment of Loans
12,713.98
4,332.74
Withholding taxes
1,108.90
2,026.10
F.I.C.A.
357.82
386.36
TOTAL FUNDS APPLIED
$49,101.92
37,828.21
FUNDS AVAILABLE
Cash on hand
1,500.00
--
Wages
14,583.11
14,781.00
Other Compensation per W-2 Statement
905.00
--
Prior Year Income Tax Refund
49.11
905.79
IUE-AFL-CIO Pension Fund
--
1,053.00
Proceeds from Loans--Net
2,851.94
458.50
Checking Account Withdrawals
4,587.38
4,717.31
Insurance Claims
--
896.34
Additional Funds
4,940.63
--
Saul Cantor Loan
--
5,000.00
Union Expense Reimbursement
2,350.00
--
U.S. Savings Bonds Cashed
2,513.28
--
Loan from P. Gripaldi
--
2,000.00
TOTAL FUNDS AVAILABLE
$34,280.45
29,811.94
EXCESS FUNDS APPLIED
$14,821.47
$ 8,016.27
*517 Cash cost-of-living expenses were calculated according to the following schedule: Cash Cost-of-Living Expenses
1967
1968
Food and Groceries
$ 3,640.00
$ 3,900.00
Clothing
1,200.00
1,320.00
Laundry
168.00
180.00
Dry Cleaning
144.00
156.00
Beauty Shop, etc.
480.00
480.00
Medicine and Drugs
180.00
180.00
Life Insurance Premiums
440.00
880.00
Health, Accident and Hospitalization
100.00
--
Amusements and Admissions
300.00
300.00
Vacation Expenses
500.00
400.00
Transportation
--
--
Cigarettes, Cigars, Cosmetics
520.00
1,144.00
Liquor and Home Entertainment
--
--
School Expenses (Music Lessons)
36.90
119.36
Legal Expenses
3,000.00
1,500.00
Police Tickets
15.00
15.00
Lock Box Rent
7.00
7.00
Tips and Gratuities: Newspaper Reporters
300.00
--
Parking Lot Attendants
200.00
25.00
Bartenders
1,300.00
150.00
Maitre'd
150.00
15.00
Waiters
1,300.00
500.00
Health Club Attendants
200.00
75.00
Political Donations
200.00
50.00
Meat Purchases (Gifts)
--
500.00
Summer Camp
--
120.00
Fire and Casualty Ins. Premiums
250.00
250.00
Auto Expenses: Gasoline and Oil
--
--
Grease and Car Washing
--
--
Parking, Storage, Toll Charges
--
--
Auto Payments--Principal and Interest
1,285.00
--
Fees for Money Orders, Etc.
--
3.00
Sundries
130.00
130.00
Cash Allowances to T/P's Children
780.00
780.00
Cash Stolen at YMHA
--
260.00
Total
$16,825.90
$13,439.36
*518 The bases for the amounts listed on the schedule of cash cost-of-living expenses were estimates obtained from petitioner Milton Weihrauch during conversations he had with the revenue agent who audited his returns. OPINION The first issue before us is whether petitioner Milton Weihrauch received $2,350 as reimbursement of employee business expenses in 1967. Respondent determined this amount inferentially. District 3 had consistently reimbursed petitioner for his expenses in years prior to 1967, but union records for that year were unavailable. Respondent discovered the amount of reimbursement for 1966 and used an amount for 1967 equal to half of the prior year's reimbursement. This was assumed to be a proper reflection of petitioner's receipts during the first 7 months of 1967. We do not criticize the method of calculation used by respondent. Considering the absence of more direct means of calculation, it was quite reasonable. However, petitioner testified, in our view credibly, that he did not receive reimbursements of $2,350 in 1967. He did not, however, specifically state that he received no reimbursements in 1967 but rather indicated that he did receive some amount. *519 We find petitioner's testimony that he did not receive as much reimbursement as $2,350 in 1967 to be supported by the fact of his changed circumstances in 1967. During the early months of that year, he was being scrutinized by international union officers, and by May, control of District 3 was taken from him and his salary stopped. In our view, petitioner has established that he received an amount significantly less than that determined by respondent. Petitioner has not established that he received no reimbursement, however; nor has he established with any certainty how much was received. On the basis of the record as a whole, we find that petitioner received $1,600 as reimbursement of his business expenses in 1967 and that none of this amount was included in gross income on his 1967 Federal income tax return. Petitioners make the further argument that, even if any reimbursements were received, "this amount would have been properly deductible on petitioners' tax form as a business expense, and, therefore, petitioners' net income, as declared by them for that year, would not have changed." This argument assumes that petitioners had employee business expenses, not previously claimed, *520 with which to offset their reimbursements in 1967. We do not find this to be the case, however. Petitioners deducted on their 1967 return $5,835 as "miscellaneous deductions." This amount was supported by a schedule describing expenses for auto, planes and trains, taxis and limousines, hotels and meals, telephone and parking, tolls, misc. Respondent allowed this deduction as employee business expenses, and there is no evidence that petitioners incurred any employee business expenses in excess of the amount allowed by respondent. In our view, there is no merit in petitioners' argument on this point. We find that no previously unclaimed expenditures were made by petitioners that could offset the reimbursements they received. The second issue presented to the Court involves petitioners' sources and applications of funds. Specifically, respondent determined that the funds applied by petitioners in 1967 and 1968 exceeded in amount their known sources of funds and that the excesses were taxable income in each year. The amounts respondent now contends are involved in the computation of these excesses differ somewhat from those appearing in the notice of deficiency because of concessions *521 by the parties and evidence produced at trial. However, the essence of the computation remains the same. Respondent contends that petitioners had the following sources of funds in 1967 and 1968: Known Sources of Funds
1967
1968
Initial Cash on Hand
$ 1,500.00
Compensation Reported on Return
14,583.11
$14,781.00
I.U.E.-A.F.L.-C.I.O. Pension
Fund Distribution
1,053.00
Compensation Not Reported on Return
905.00
Income Tax Refund
49.11
905.79
Insurance Claim Proceeds
896.34
United States Savings Bonds
2,513.28
Loan Proceeds (Net) (Institutional
Lenders)
2,851.94
458.50
Loan Proceeds (Net)(Individuals)
7,000.00
Business Expense Reimbursements
2,350.00
Totals
$24,752.44
$25,094.63 Respondent further contends that petitioners applied funds in the following manner: Application of Funds
1967
1968
Income Tax Withheld From Salary
$ 1,108.90
$ 2,026.10
FICA Tax Withheld From Salary
357.82
386.36
Deductible Expenditures (Cash
and Check)
9,712.92
7,947.00
Loan Repayments (Net)
12,713.98
4,332.74
Legal Fees
3,000.00
1,500.00
Nondeductible Personal Expendi-
tures (Check)
3,749.90
3,153.10
Nondeductible Personal Expendi-
tures (Cash)
13,825.90 [5]
11,939.36 [5]
(Other Than Legal Fees)
Totals
$44,469.42
$31,284.66
*522 Ultimately, respondent contends that amounts approximately equal to the differences between the sources and applications in each year were taxable income. [6] He asserts that the amounts of income determined in this manner were $19,762.10 in 1967 and $6,032.27 in 1968. Petitioners contend that respondent's use of the sources and applications of funds method of determining their taxable income is "incorrect and improper" and that respondent's "presumption of correctness" is lost because the method was "arbitrary and improper." On the first point, we note that the sources and applications of funds method of determining taxable income is well recognized and often applied. See, e.g., Vassallo v. Commissioner,23 T.C. 656 (1955); Cohen v. Commissioner,9 T.C. 1156 (1947), affd. 176 F.2d 394 (10th Cir. 1949). *523 Where, as here, petitioners' books and records do not reflect all of their sources of income and use of the method shows a significant discrepancy between reported income and income computed under that method, respondent is certainly justified in relying on such an indirect method of establishing true taxable income. See Lipsitz v. Commissioner,21 T.C. 917, 931 (1954), affd. 220 F.2d 871 (4th Cir. 1955), cert. denied 350 U.S. 845 (1955). On the second point, the principal ground petitioners advance in support of their contention regarding the "presumption of correctness" is that, in making the applications of funds computation, respondent relied almost exclusively on estimates of expenses given by petitioner Milton Weihrauch which were erroneous. Since these estimates were of cash expenditures for which substantiation would be quite difficult, the best sources of information regarding them were petitioners themselves. Respondent certainly cannot be faulted for choosing to rely heavily on Mr. Weihrauch's statements. That these statements have *524 been proved partially inaccurate aids petitioners on the merits of this case, but in no way discredits respondent's method, particularly when the source of this subsequent proof is principally Mr. Weihrauch's testimony. We find that respondent's use of the sources and applications of funds method for computing petitioners' taxable income in this case was proper and reasonable. Therefore, we reject petitioners' contentions in this regard. The scheduled items in respondent's computations conflict somewhat with our findings, however. We have found that petitioners received a reimbursement of $1,600 rather than the $2,350 reimbursement listed as a Source of Funds in 1967 and that petitioners applied $1,200, not $1,500, for legal fees in 1968. Also, these schedules do not take into account the effect of funds remaining in petitioners' checking account at the end of each year. [7]
*525 Petitioners strongly dispute the amount respondent determined to be their cash expenditures for nondeductible personal expenses in 1967 and 1968. Milton Weihrauch testified generally that petitioners did not expend any more than the amounts stipulated by them as minimum expenditures for personal living expenses. Testimony regarding certain specific items was also given. We find petitioner's testimony to be credible, although subject no doubt to some inaccuracy due to the long time lapse between the events and the trial of this case. Petitioner's testimony differs in many respects from the amounts he gave a revenue agent during the audit of the return. However, we find much of his testimony more capable of belief than the prior estimates, which may have been inflated by a consideration of later, inflated price levels or a sense of misplaced pride. We have examined the amounts advanced by the parties as petitioners' nondeductible personal cash expenditures, and we have weighed them in light of the record presented to us. We find that these expenditures were $8,675.90 in 1967 and $8,515.36 in 1968, omitting legal fees. Employing respondent's method of computation but substituting *526 the amounts we have found when they differ from those used by respondent, there would still be excesses of funds applied over sources of funds of $16,916 in 1967 and $2,333 in 1968. However, petitioners contend that the sources of these excess expenditures were gifts and loans to them which were properly excluded from their gross income. In their brief they assert that in 1967 Mr. Weihrauch received $6,752 at the Roost Restaurant testimonial, other gifts of $7,850, and loans of $5,800. They contend that in 1968 they received two gifts from Mr. Weihrauch's daughter and son-in-law totaling $2,300, a loan of $900, and a legal settlement of $352.
Respondent's initial contention with regard to these asserted gifts and loans is that petitioners did not in fact receive more than a small portion of the amounts described. In the alternative, respondent contends that any amounts received from those sources were gross income to petitioners and not gifts or loan proceeds. On this record, we must reject respondent's first contention. Petitioner Milton Weihrauch carefully detailed the persons from whom he received funds and the amounts received. His testimony is corroborated by another witness *527 appearing for petitioner and certain other evidence. While we do not find petitioners' list of transferors entirely accurate in light of the testimony given at trial, we do find that, in addition to sums already considered as sources of funds, sums approaching those asserted by petitioners were received from most of the persons described. We find that in 1967 Milton Weihrauch received $6,750 from numerous people who attended the Roost Restaurant testimonial held for him and $2,400 in connection with the testimonial from other persons who did not attend. In 1967, he also received $4,750 which petitioners characterized as gifts unconnected with the testimonial and $5,800 which petitioners characterized as loans. We find that in 1968 Mr. Weihrauch received $2,300 from his daughter and son-in-law and $900 from his employer. The amounts received by petitioners fall into two broad categories, those asserted by petitioners to be gifts and those asserted to be loans. We find that the amounts asserted to be loans, $5,800 in 1967 and $900 in 1968, were in fact loans to petitioners not includable in their gross income in 1967 or 1968. These amounts were transferred to Mr. Weihrauch with *528 the understanding that they would be repaid, and in fact some repayments were made. One loan was evidenced by a note executed by Mr. Weihrauch. We find that valid obligations to repay these amounts existed during the years here in issue and, therefore, that these amounts were not gross income to petitioners in 1967 and 1968. See Falkoff v. Commissioner,62 T.C. 200, 205-06 (1974). Petitioners have characterized the remaining amounts received by them in 1967 and 1968 as "gifts," both in their argument and in Mr. Weihrauch's testimony. Whether a transfer is a "gift" within the meaning of section 102(a), and therefore excluded from gross income, is primarily a question of fact to be determined by an examination of all relevant facts in the record. The most critical consideration, however, is the donor's intention. Johnson v. Commissioner,48 T.C. 636, 639 (1967); Hagar v. Commissioner,43 T.C. 468, 483-84 (1965). A gift, as that term is used in section 102(a), is a transfer which proceeds from detached and disinterested generosity, *529 motivated by affection, respect, admiration, charity or like impulses. Commissioner v. Duberstein,363 U.S. 278 (1960). A transfer is not a gift if it proceeds "primarily from 'the constraining force of any moral or legal duty,' or from 'the incentive of anticipated benefit' of an economic nature." Commissioner v. Duberstein,supra at 285. Of the numerous amounts received by petitioners in this final category, two occurred in circumstances quite distinguishable from the others. These two amounts were given to petitioners by Mr. Weihrauch's daughter and son-in-law. These amounts clearly proceeded out of familial affection for petitioners and fall within the description of gifts provided in Commissioner v. Duberstein,supra.We, therefore, hold that in addition to the other sources of nontaxable receipts which were used by respondent and which we have found to be established by the record, petitioners in 1968 received gifts from Mr. Weihrauch's daughter and son-in-law totaling $2,300. The remaining amounts were all received within a relatively short period around the time of the Roost Restaurant testimonial. The only *530 sources of evidence regarding these transfers were petitioner Milton Weihrauch and Richard Lynch, one of the transferors who was present at the testimonial. We have been handicapped in our deliberation by the failure to produce any of the other transferors for examination. Certainly, their testimony would have best established their intent in making the transfers in issue. We have searched the record, however, and reached our decision upon careful consideration of all the evidence provided. Petitioner Milton Weihrauch provided a sketchy narrative of the transfers to him usually describing each of them as a "gift." But his testimony regarding the motives of the transferors was often conclusory or nonexistent. Petitioner frequently relied either on the absence of an indication by the transferor of an expectation to be repaid or on an expressed or implied indication that the transferors did not expect to be repaid. The transferors' expectations in this regard merely distinguish the transfers from loans, however, and establish only one elemental requisite for characterization as a gift in the statutory sense. Petitioner testified more generally that the basis of his conclusion that *531 the transfers connected with the testimonial were gifts was that they were made at a testimonial given for him to which people went to contribute. He noted that many of the transfers were made to help him financially and that the many transferors wanted nothing in return. We think it is significant that petitioner's testimony principally seeks to establish the absence of any direct quid pro quo between him and the transferors. It is notably bare of reference to those motives described in Commissioner v. Duberstein,supra, as leading to a gift in the statutory sense. The more telling testimony is that of Richard Lynch. Mr. Lynch testified that he did not expect any return of his money in the form of services or something similar, but he, too, failed to describe his transfer in terms of motives related to those described in Commissioner v. Duberstein,supra.From his testimony we conclude that, although the ultimate transferors could be considered friends of Mr. Weihrauch in a general sense, the contributions were made out of a sense of duty, a moral obligation, by labor movement officers and related parties in a capacity that could almost *532 be described as official. The various transferors represented various levels of numerous unions, many having no functional relationship with the I.U.E. The bulk of the funds received by petitioners was not even contributed by the persons attending the testimonial. It appears that collections were made within the various unions represented, and the funds collected were delivered in a lump sum to petitioner. Testimonials of this nature appear to have been a "practice" among unions. In our view, the transfers in this last category made to petitioners did not proceed from "detached and disinterested generosity" out of "affection, respect, admiration, charity or like impulses." They appear to have been made under the constraining force of a moral obligation felt toward Mr. Weihrauch. Requests for contributions from high-ranking union officials to help another high-ranking official could hardly be ignored. We also note that at the time these transfers were made no criminal charges were outstanding against petitioner. He had been ousted from his leadership position in what petitioner described as "a political falling out." Petitioner was engaged in legal action to regain that position. *533 Many of the contributors may have believed that petitioner's reinstatement was quite possible. This Court addressed a somewhat similar issue in Kralstein v. Commissioner,38 T.C. 810 (1962). On a much more complete record, we found that the motives of certain individual contributors at a testimonial dinner were characteristic of gifts in the statutory sense, while other contributors had business reasons for their contributions. On this record, we find that petitioners have failed to establish that the motives of any of this last group of transferors bring their transfers within the exclusion of section 102. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Petitioners have conceded that cash expenditures in a total amount of $6,486 were made in 1967 consisting of the following items: ↩
Food & Groceries
$2,200
Clothing
915
Laundry
0
Dry Cleaning
144
Beauty Shop
240
Medicine & Drugs
50
Life Insurance Premium
0
Health, Accident & Hospitalization
100
Amusement & Admission
300
Vacation Expense
0
Cigarettes, Cigars & Cosmetics
520
School Expenses (Music Lessons)
0
Police Tickets
15
Lock Box Rent
7
Tips & Gratuities
Newspaper Reporters
0
Parking Lot Attendants
25
Bartenders
25
Maitre'd
30
Waiters
260
Health Club Attendants
40
Political Donations
200
Fire & Casualty Insurance Payments
0
Auto Payments
1,285
Sundries
130
Cash Allowance to Children
0
3. Petitioners have conceded that cash expenditures in the total amount of $6,880 were made in 1968 consisting of the following items: ↩
Food & Groceries
$2,200
Clothing
1,100
Laundry
0
Dry Cleaning
156
Beauty Shop
240
Medicine & Drugs
50
Life Insurance Premium
0
Amusement & Admission
300
Vacation Expense
400
Cigarettes, Cigars, Cosmetics
1,144
School Expenses (Music Lessons)
0
Police Tickets
15
Lock Box Rent
7
Tips and Gratuities
Parking Lot Attendants
25
Bartenders
25
Maitre'd
15
Waiters
100
Health Club Attendants
40
Political Contributions
50
Meat Purchases (Gifts)
500
Summer Camp
120
Fire & Casualty Insurance Payments
0
Fees for Money Orders
3
Sundries
130
Cash Allowance to Children
0
Cash Stolen at YMHA
260
4. Petitioners inadvertently omitted in their computation expenses of $1,984 that were listed on their return. Respondent has conceded that they are entitled to a deduction for these expenses.↩
5. These figures were determined as in the notice of deficiency.↩
6. The precise differences between the listed sources and applications are $19,716.98 for 1967 and $6,190.03 for 1968. Respondent has not explained the difference between these figures and those advanced by him as taxable income computed by the sources and applications of funds method.↩
7. The credit differences between the deposits to and withdrawals from the account were $132.62 in 1967 and $238.24 in 1968. The 1967 credit difference would have been a source of funds in 1968. The record does not show what, if any, credit balance was on hand at the beginning of 1967 for use in that year.↩