ELIZABETH W. JOHNSTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnston v. Commissioner
Docket No. 17752-84.
United States Tax Court
T.C. Memo 1988-502; 1988 Tax Ct. Memo LEXIS 532; 56 T.C.M. (CCH) 520; T.C.M. (RIA) 88502; October 19, 1988
Leda Williams, for the petitioner. Lynda Cheung, for the respondent. BUCKLEY
MEMORANDUM FINDINGS OF FACT AND OPINION BUCKLEY, Special Trial Judge: This case was assigned pursuant to the provisions of section 7456(d) (redesignated sec. 7443A(b) by sec. 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755) and Rules 180, 181 and 182. [1]
FINDINGS OF FACT Petitioner Elizabeth W. Johnston, also known as Elizabeth Johns, [2] filed an individual Federal income tax return for the taxable year 1980. By notice of deficiency respondent determined a deficiency of $ 6,300.65 in petitioner's 1980 Federal income tax and an addition to tax under section 6653(a) in the amount of $315.03. *535 This case involves one main issue: whether petitioner made contributions deductible under section 170(c) to the Universal Life Church, Inc. There are also two subsidiary issues: (1) whether petitioner is liable for an addition to tax under section 6653(a) and (2) whether damages should be awarded to the United States under the provisions of section 6673. Some of the facts have been stipulated and are so found. The written stipulation of facts was orally supplemented at trial. The stipulations of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of this petition, petitioner resided in Sherman Oaks, California. Petitioner formed a "church," [3] Charter No. 37801 (hereafter "charter"), chartered by the Universal Life Church, Inc. of Modesto (hereafter "ULC Modesto"). In 1980 petitioner reported total contributions to ULC Modesto of $ 24,500 and claimed a deductible contribution in the amount of $ 21,867, which respondent disallowed. [4]
*536 During the taxable year in issue petitioner pursued a career in outside sales. She worked out of her home selling medical supplies to various hospitals. Generally, she sold and received orders over the telephone. Phone calls constituted an integral facet of her job performance. In 1980 petitioner's adjusted gross income from outside sales, interest income, and investment property equaled $ 43,733. Petitioner also pursued a career as a singer. Petitioner obtained her Charter No. 37801 with ULC Modesto in August of 1980 for the dual purpose of obtaining tax-exempt status with a recognized tax-exempt religious organization and associating with a religious organization that offered autonomy and independence to its chartered members. Petitioner satisfied the ULC Modesto requirements that there be three persons over the age of 18 as members of each congregation, that those three persons fill the offices of pastor, secretary, and treasurer, and that the pastor be a minister. Petitioner selected three persons as her founding members: herself as pastor, Robert K. Sims, as secretary and Lois Fredericks as treasurer. Petitioner applied for and received minister's credentials *537 at no cost from ULC Modesto. Receipt of the credentials did not require the attainment of specific education or other standards. However, petitioner had been ordained a minister by Our Church In The Garden, Inc. in 1977 and subsequently by the Free Anglican Church of America in 1981. Petitioner received a Diplomate in Pastoral Counseling in 1979 and in 1981 she received the degree of Doctor of Ministry from Golden State University in San Marcos, California. Further, after the taxable year 1980 here in question petitioner participated in an organization called Outstanding Ministers and on a committee called Coalition for Religious Freedom. She served on the board for the San Fernando Valley and as Chaplain and President of the Southern California Motion Picture Council, an organization which honors movie actors and actresses devoted to high moral and spiritual values. We admire petitioner's energy, her commitments and her wide repertoire of activities and accomplishments. Petitioner also entered into a congregational agreement with the Church of Universal Harmony, another organization chartered by ULC Modesto. This agreement reiterated that neither of the groups was the agent *538 of the other or of ULC Modesto. The Church of Universal Harmony had no authority over petitioner's charter. However, the Church of Universal Harmony agreed "to defend it against all legal attacks upon its organizational status at no expense to the chartered congregation or its directors." Petitioner paid $ 23 per month to the Church of Universal Harmony. Petitioner established a separate bank account, account no. 0664-014578, for charter 37801 at Wells Fargo Bank in the name of Universal Life Church, Inc. The bank resolution listed petitioner's home address as the mailing address. The resolution required that petitioner and two named persons had signatory authority and that the checks required two signatures. However, all checks written on this account during 1980 were signed only by petitioner. Petitioner maintained a personal checking account at Security Pacific National Bank. During 1980 petitioner wrote five checks on her personal checking account, payable to Universal Life Church, totaling $ 24,513. She deposited three of these checks totaling $ 23,250 into her charter 37801 account. She delivered two checks totaling $ 1,263 to the Church of Universal Harmony. [5] *539 The latter two checks were deposited into an account at Capistrano National Bank. Petitioner opened a second charter account for a brief time. On December 23, 1980 petitioner transferred $ 8,929.54 from account no. 0664-014578 into a new account, account no. 0664-014461, also in the name of Universal Life Church, Inc. Then, on February 10, 1981, petitioner retransferred the remaining balance in account no. 0664-014461 equaling $ 7,996.32 back into account no. 0664-014578. As a result, petitioner closed out account no. 0664-014461 approximately one month and three weeks after opening it. Petitioner did not offer an explanation for playing bank account musical chairs. Expenses paid out of the charter 37801 account consisted of payments, inter alia, on petitioner's health *540 and disability insurance, Equity League Welfare Trust Fund, rent, cable television, telephone and answering service expenses, water and power utilities, office supplies, carpet cleaning, furniture repair and linen replacement, air humidifier, miscellaneous attachments for a tape recorder, moving expenses, a stained glass window designed by petitioner, and checks to various other Universal Life Church charters. She also made a "loan" to herself of $ 690, signing a note and making repayments of $ 69 per month. In addition, during 1980 the charter acquired jewelry for investment purposes at a cost of $ 8,708. Some of this jewelry was sold to a member of the charter's congregation in 1981, 1982, and 1983. In April of 1981 petitioner deposited in her personal checking account $ 2,000 received for a 14 carat diamond pendant; in January 1982, petitioner received $ 1,500 for diamond stud earrings and in January 1982 and February 1982 she deposited $ 1,000 and $ 450, respectively, in her personal account with $ 50 not accounted for at all; in November 1982 petitioner received $ 2,000 for two gold and diamond stick pins and a diamond heart pendant and in February 1983 and March 1983 she *541 deposited $ 1,000 and $ 900, respectively, in her personal account, with $ 100 not accounted for at all. Payments for a pearl choker ($ 1,200) and for a diamond chain ($ 600) were deposited in the charter account in March of 1982. The record does not show that ULC Modesto authorized, considered, or reviewed operations of the charter or had use of or the ability to use any of the funds deposited into the charter's checking accounts. ULC Modesto did not exercise such control. According to petitioner's testimony and her quarterly reports to ULC Modesto for 1980, she held approximately 20 regular meetings in her home with attendance averaging 5 people per meeting. During the 1980 taxable year in issue, her charter donated $ 50 plus their time towards a senior citizen Thanksgiving dinner. In addition, her charter donated $ 600 to the San Fernando Juvenile Hall, a shelter for abused and homeless children. OPINION Petitioner's "Contribution"
Petitioner's statutory basis for a deduction turns upon the provisions of section 170(a) which allows a deduction for "any charitable contribution *542 (as defined in subsection (c)) payment of which is made within the taxable year." Subsection (c) defines "charitable contribution" to mean "a contribution or gift to or for the use of" certain entities organized and operated exclusively for, inter alia, religious or charitable purposes, no part of the net earnings of which inures to the benefit of any individual. Neither the statute nor the regulation defines what is meant by "contribution or gift." Foster v. Commissioner,80 T.C. 34, 222 (1983), affd. on this issue 756 F.2d 1430 (9th Cir. 1985), cert. denied 474 U.S. 1055 (1986). The expression "charitable contribution" as used in section 170 is synonymous with the word "gift." Sec. 170(c); Burwell v. Commissioner,89 T.C. 580, 589 (1987), appeal dismissed (9th Cir., May 4, 1988); DeJong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962). A gift is the by-product of "detached and disinterested generosity" given "out of affection, respect, admiration, charity or like *543 impulses." Commissioner v. Duberstein,363 U.S. 278, 285 (1960); Burwell v. Commissioner, supra at 589. A gift lacks legal or moral obligation and the inducement of anticipated benefit. Commissioner v. Duberstein, supra at 286; Burwell v. Commissioner, supra at 589. We stated our own test in DeJong v. Commissioner, supra at 899: A gift is generally defined as a voluntary transfer of property by the owner to another without consideration therefor. If a payment proceeds primarily from the incentive of anticipated benefit to the payor beyond the satisfaction which flows from the performance of a generous act, it is not a gift. * * *
Whether a donation has been made is a question of fact. Burwell v. Commissioner, supra at 590; Johnson v. Commissioner,48 T.C. 636, 639 (1967). We find that petitioner never intended to make, and in fact never did make contributions to ULC *544 Modesto during the taxable year in issue, 1980. In examining petitioner's intention in regard to transfers from petitioner's personal checking account to her charter account and back to her, we find that these transactions were not gifts. By these checks, petitioner transferred funds into bank accounts which were nominally in the name of ULC Modesto. During 1980, only petitioner signed checks although the bank resolution required two signatures. Petitioner retained complete control over her charter account. This is evidenced clearly by the checks which she wrote on the accounts. She used these accounts as any individual would use a personal checking account: she paid rent, utility costs, insurance bills, costs of repairs and replacements for her apartment and her possessions, telephone and answering service expenses and other personal purchases. In short, the amounts paid from the charter account precisely reflected petitioner's personal living expenses and investments. They were not exactly the same expenses petitioner would have paid had she not entered into this ULC scheme. We note, however, that the contribution of $ 600 to the San Fernando Juvenile Hall represents a *545 deductible charitable contribution. Petitioner was not motivated by "detached and disinterested generosity" in her so-called gifts. She made no contributions to ULC Modesto. She simply transferred funds from her personal account to accounts labeled Universal Life Church, Inc. She retained complete dominion and control over these funds. She utilized these funds primarily for her own private purposes. The transfers were not, therefore, contributions within the meaning of section 170. Dew v. Commissioner, 91 T.C.   (Sept. 14, 1988); Burwell v. Commissioner, supra at 591; Svedahl v. Commissioner,89 T.C. 245 (1987); Wedvik v. Commissioner,87 T.C. 1458 (1986). Section 262 provides "Except as otherwise expressly provided in this chapter, no deductions shall be allowed for personal, living, or family expenses." As succinctly stated in Burwell, "Petitioners cannot, through their mail-order 'churches,' translate their personal expenses into deductible charitable contributions." 89 T.C. at 591. Petitioner failed *546 completely to meet her burden of proof regarding tax-exempt status of her charter or the Church of Universal Harmony. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). To the extent that petitioner made payments to the Church of Universal Harmony, the evidence reveals that such payments were for bookkeeping assistance and like matters. Apart from the fact that the record does not show that organization was a qualified one, such payments cannot constitute contributions, as petitioner expected a commensurate benefit in return. Burwell v. Commissioner, supra at 591. Private Inurement
Section 170, in defining a charitable contribution or gift, limits deductibility to gifts made to those certain organizations "no part of the net earnings of which inures to the benefit of any * * * individual." Had we held that petitioner in fact had made gifts to ULC Modesto, we would nonetheless refuse to allow the deduction in question. The pervasive use of the charter account by petitioner for purely personal expenses clearly results in self-inurement to her *547 of a type which would result in any such organization falling outside the statutory guidelines for the allowance of the deduction. Burwell v. Commissioner, supra at 592; see, e.g., Smith v. Commissioner,800 F.2d 930 (9th Cir. 1986), affg. a Memorandum Opinion of this Court; Davis v. Commissioner,81 T.C. 806 (1983), affd. by unpublished opinion 767 F.2d 931 (9th Cir. 1985); Miedaner v. Commissioner,81 T.C. 272 (1983). Independent Tax-Exempt Status
Our holding above that petitioner did not make contributions to ULC Modesto when she transferred funds into her charter account, as a practical matter, resolves the substantive issues in this case. We nevertheless proceed to consider what was to be petitioner's main argument in this case: that petitioner's charter constituted an independent church entitled to tax-exempt status under section 501.[6] Preliminarily, we note that petitioner does not seriously contend she made these contributions to ULC Modesto, which was listed as an exempt organization during 1980. [7] Further, we have held that the exemption previously held by ULC Modesto does not *548 apply to its various chartered congregations. Davis v. Commissioner, supra at 815; Burwell v. Commissioner, supra at 594. *549 An organization described in section 501(c)(3) is exempt from Federal income taxation pursuant to section 501(a). Two tests must each be satisfied to meet the requirements of section 501(c)(3) -- an operational test and an organizational test. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs; see, e.g. Church in Boston v. Commissioner,71 T.C. 102, 106 (1978). The operational test requires that an organization engage in activities which accomplish one or more of the exempt purposes specified in section 501(c)(3). Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. An organization is not operated for exempt purposes unless it serves a public rather than a private interest. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. Further, no part of the net earnings of an organization may inure to the private benefit of any individual. Sec. 1.501(c)(3)-1(c)(2), Income Tax Regs.
*550 Prohibited inurement is strongly suggested where an individual or small group is the principal contributor to an organization and the principal recipient of the distributions of the organization, and that individual or small group has exclusive control over the management of the organization's funds. The Church of Eternal Life and Liberty, Inc. v. Commissioner,86 T.C. 916, 927 (1986); Basic Bible Church v. Commissioner,74 T.C. 846, 857 (1980); Church of the Transfiguring Spirit v. Commissioner,76 T.C. 1, 7 (1981). As previously held, petitioner received impermissible private inurement. Therefore, petitioner has failed to satisfy an essential requirement for tax-exempt status of her charter under section 501. Consequently, petitioner's argument that her charter had independent tax-exempt status during 1980 fails. We allowed petitioner broad latitude in introducing records for years after 1981 and 1982 in support of her argument that the charter 37801 was just a fledgling church. It is apparent that in later years petitioner expended funds for various church-connected items, hymnals, organ recordings, and so forth. *551 Further, we accept for purposes of this opinion, petitioner's testimony that a later incorporated church of hers was granted both state and Federal tax-exempt status. We do not in any way doubt petitioner's sincerity in regard to her desire to pastor her own church. Her ULC Charter 37801 does not, however, meet that requirement. The funds she deposited into the charter 37801 account were used for her own self-inurement, in 1980 and in subsequent years. For instance, petitioner was unable to explain satisfactorily why receipts from sale of jewelry paid for with charter 37801 funds were deposited in her personal bank account. Petitioner's attempt to trace her funds only shows that petitioner commingled funds, and that she considered the charter's account and her personal account as interchangeable. Petitioner attempts to justify part of the charitable contribution deduction by relying on section 107 which provides that in the case of a minister of the gospel, gross income does not include the rental value of a home furnished to him or her as part of his compensation. Petitioner contends that $ 2,469.48 of the charitable contribution deduction totaling $ 21,867 constitutes reasonable *552 compensation for services performed. Petitioner misplaces her reliance. She was the founder of her charter, the only donor, the pastor and her own employer who passed resolutions providing that a parsonage allowance be paid to herself. The charter is not tax-exempt. Accordingly, petitioner may not carve out $ 2,469.48 as exempt under the parsonage allowance provisions. Further, we need not decide whether petitioner's chartered congregation was in fact a religious organization as alleged, since regardless of its character, petitioner has not met the statutory conditions for exemption from Federal income taxation. Tax-Exempt Status Under ULC Modesto
Although petitioner had a charter under a tax-exempt organization, petitioner may not avail itself of ULC Modesto's tax-exempt status for the taxable year in issue, 1980. The Ninth Circuit, in Hall v. Commissioner,729 F.2d 632 (9th Cir. 1984), affg. a Memorandum Opinion of this Court, in considering another so-called contribution to ULC Modesto under circumstances almost identical to those at bar, stated (p. 634), "The courts have repeatedly held that *553 exemptions for parent churches do not automatically carry over to local congregations." See also Rager v. Commissioner,775 F.2d 1081 (9th Cir. 1985), affg. a Memorandum Opinion of this Court; Kalgaard v. Commissioner,764 F.2d 1322 (9th Cir. 1985), affg. a Memorandum Opinion of this Court; Burwell v. Commissioner,89 T.C. 580 (1987). For purposes of Federal income tax law, the substance of a transaction rather than its form is controlling. Gregory v. Helvering,293 U.S. 465 (1935); Kingsbury v. Commissioner,65 T.C. 1068, 1083, 1085 (1976). The test is what the parties intended, their agreement, and their conduct in executing its provisions. Commissioner v. Culbertson,337 U.S. 733, 742 (1949). Other than the self-serving testimony of petitioner, the record fails to reveal that she forwarded reports of her activities to ULC Modesto; it fails to reveal any review by ULC Modesto of any of the activities of petitioner; it fails to reveal any dominion or control by ULC Modesto over *554 the person, assets, or activities of petitioner, or any legal right to do so. The record does reveal that petitioner continued her various personal and investment activities in the same manner after adopting the charter as prior to her utilization of ULC Modesto for its promised tax-exempt status. As we stated in Burwell, "We will not, by closing our eyes to reality, allow a paper trail to transform illusion into a tax deduction." 89 T.C. at 594. Therefore, petitioner cannot utilize the tax-exempt status of ULC Modesto. Section 6653(a) Addition to Tax
Respondent determined that petitioner was liable for the addition to tax under section 6653(a). Petitioner has the burden of proving that this addition was improper. Petitioner has failed to meet her burden. She has failed to show that the underpayment was not due to negligence or intentional disregard of rules and regulations. Hall v. Commissioner,729 F.2d at 635; Dew v. Commissioner, 91 T.C.    (Sept. 14, 1988). She must have known that she could not convert her personal expenses *555 into deductions by the simple expedient of setting up her bank account in the name of the Universal Life Church, Inc. We find that all of petitioner's underpayment of tax was due to negligence. Section 6673 Award of Damages
Respondent requests an award of damages under section 6673. That section provides that this Court shall award damages to the United States not in excess of $ 5,000 where it appears to the Court that the proceedings before it have been instituted or maintained primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless. We have carefully examined the complete record in light of respondent's request. Based on this examination we have determined in our discretion to deny respondent's request for damages. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Hereinafter, references to "petitioner" shall refer to Elizabeth W. Johnston. ↩
3. We use terms such as "church," "congregation," "parsonage," "pastor," and "minister" for purposes of simplicity; the uses do not indicate findings on our part as to such status. ↩
4. In 1980 the 50-percent limitation of section 170↩ applied to charitable contribution deductions. 5. The parties stipulated that all five checks written by petitioner were deposited into the charter 37801 account. Testimony and exhibits have revealed this stipulation to be incorrect. Erroneous stipulations are not binding on this Court. Gulf Oil Corp. v. Commissioner,87 T.C. 135↩ (1986). 6. Section 501 provides, in pertinent part, as follows: (a) Exemption From Taxation. -- An organization described in subsection (c) or (d) or section 401 (a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503. (c) List of Exempt Organizations. -- The following organizations are referred to in subsection (a): (3) Corporations, and any community chest, fund or foundation, organized and operated exclusively for religious, charitable, * * * or educational purposes * * * , no part of the net earnings of which inures to the benefit of any private shareholder or individual * * * ↩
7. The Internal Revenue Service subsequently revoked its determination of tax exemption in 1984, and ULC Modesto filed an action for declaratory relief in the United States Claims Court. The Claims Court upheld the revocation, holding that ULC Modesto was not operated exclusively for exempt purposes. Universal Life Church, Inc. v. United States,↩ 13 C. Ct. 567 (1987), on appeal (Fed. Cir., Jan. 28, 1988).